# A. A. JOHNSON, BY F. J. WERNER, HIS GUARDIAN, v. RICHARD JOHNSON.

137 N. W. (2d) 840.

September 17, 1965—No. 39,378.

*Baudler & Baudler* and *Alderson, Catherwood, Kelley & Ondov,* for appellant.

*Frundt & Hibbs,* for respondent.

MURPHY, JUSTICE.

This is an action for an accounting with a counterclaim asserting an oral contract to convey real property. The appeal is from an order denying defendant's alternative motion for amended findings of fact and conclusions of law or for a new trial. The appeal raises issues as to (1) the correctness of the court's findings that there was no valid oral contract to convey real estate; (2) a finding that the relationship of principal and agent existed between the parties; (3) whether the findings of the court went beyond the issues litigated; and (4) denial of a jury trial on the issue of reasonable value of contributions and services.

The action is brought by F. J. Werner, guardian of one A. A. Johnson who at the time of the action was 82 years of age, a widower, and the father of 13 children. The action is against Johnson's son Richard to obtain an accounting with reference to the income and personal property of a farm owned by the father and operated by the son. It appears that the father was successful in his business ventures and prudent in his investments. He apparently was the head of a closely knit family, his sons having worked with him in family ventures all their lives. He operated a farm implement company in Blue Earth, Minnesota, and at the time of trial had three farms, each of which was operated by one of his sons. The largest, a 960-acre farm in Mower County, was operated by the defendant, Richard. A 760-acre farm in Faribault County was operated by his son Robert, and his son Ernest operated a 160-acre farm in Freeborn County. Prior to 1946 the farm in Faribault County had been managed and operated by another son, Andrew.

It would appear from the record that the dispute with which we are here concerned originated at the time the father was placed under guardianship. We gather that in the process of making an inventory of the father's assets, Richard was requested to make an accounting with reference to the farm he was operating and the personal property on it. When he failed to account, this action was brought. The record would indicate that from the history of the relationship between the father and his sons, there were no definite arrangements made as to wages or shares of income. The sons continued to work and be associated with the father, apparently accepting without complaint compensation which they felt was sufficient for their needs. The trial court found that the father purchased the Mower County farm in 1941 and that his son Richard agreed to operate it. He thereafter moved upon the farm and has remained in possession of it since. The father originally provided farm machinery and livestock for the farming operations. The facts are well summarized in the following findings of the trial court:

"At the time of the purchase of said premises by the plaintiff herein the land was run down, the buildings in disrepair, and most of it was not under cultivation. The land was purchased for the sum of $24,000.00,

the price being $25.00 per acre. The premises are now reasonably well improved, some 700 acres is under cultivation, and the balance of the land, with some tiling, could be put under cultivation. In the probate proceedings in the guardianship matter of the plaintiff said land was appraised in the sum of $144,000.00, or $150.00 per acre thereof, and the Court finds this to be the fair market value of said premises as of the date of said appraisal on May 23, 1961, and there has been no depreciation in its value since. The increase in value of said farm from the time of its purchase to the present time has been due because of the improved condition of the land and buildings and the general rise in the value of farm lands.

"At the time of making the inventory of the personal property on said premises the guardian listed farm machinery, grain and livestock which were appraised in the sum of $31,942.75, on May 23, 1961. These items appear in the sheet entitled 'Richard (Bud) Johnson' in the inventory, Plaintiff's Exhibit No. 21.

"The defendant has on deposit in his name in the First National Bank of Leroy the sum of $11,747.25, the balance on June 30, 1962; and on deposit in the Farmers State Bank of Elkton, in an account in the name of R. E. Johnson and Helen Johnson, a balance as of December 30, 1961, of $17,776.01, part of this deposit coming from money belonging to Helen Johnson; and further on deposit in the Farmers State Bank of Elkton, Minnesota, in the name of Helen Johnson and R. E. Johnson, showing a balance on December 31, 1962, the sum of $13,189.13; and a deposit in the Farmers State Bank of Adams, with a balance on January 1, 1963, of $16,892.10. The source of the deposits to these accounts which were made since the guardianship proceedings does not appear in the testimony. All the deposits, with the exception of $300.00 of the wife's money, were made from the sale of produce and livestock from the farm premises.

"After his appointment as guardian, F. J. Werner made a demand on the defendant for an accounting of the transactions concerning said land and the operation thereof, and subsequently thereto, and on October 19, 1961, brought this action in behalf of said Ward against the defendant for an accounting. The defendant by answer and counterclaim

claims to be the owner of all of the real estate and of all of the personal property hereinbefore described.

"At the trial the Court submitted an advisory verdict to the jury, which verdict, omitting the caption, reads as follows:

" 'We, the jury impaneled and sworn in the above entitled action find the answers to the Court's questions to be as follows:

" 'Question No. 1: Did Richard Johnson operate the 960 acre farm under an oral agreement with his father, A. A. Johnson, wherein the father agreed to transfer ownership of the farm after it was paid for, to Richard Johnson, upon his doing the following things: To work hard, pay the taxes and insurance premiums, make improvements, and get the farm paid for, and upon his needing money, help his father out?

" 'Answer: Yes.

" 'If your answer to Question No. 1 is yes, answer Question No. 2; if no, do not answer Question No. 2.

" 'Question No. 2: Did Richard do the things mentioned to be done by him in Question No. 1?

" 'Answer: Yes.'

"The Court does not adopt the advisory verdict of the jury, but specifically finds that Richard Johnson did not operate the 960 acre farm under an oral agreement with his father, A. A. Johnson, wherein the father agreed to transfer ownership of the farm after it was paid for to Richard Johnson upon his doing the following things: To work hard, pay the taxes and insurance premiums, make improvements, and get the farm paid for, and upon his needing money, help his father out. The Court finds that there was no such agreement, oral or written.

"At the time Richard Johnson went on said farm premises to operate and manage the same there was no agreement, oral or written, with his father, the plaintiff herein, with respect to the operation of said farm, or the compensation to be given the said defendant therefore, nor was any agreement ever reached in those respects by and between the defendant and his father, the plaintiff herein.

"The defendant has at all times been in possession of said land and personal property as the agent of the plaintiff, and so operated the farm. For his work and services in the management and operation of said land

during all the years he farmed and operated the same up to the time of the appointment of the guardian herein the defendant is entitled to the reasonable value of such labor and services. To compensate the defendant for his labor and services in connection with said premises the defendant is entitled to an undivided one half of all the livestock, farm machinery and grain on said premises at the time of the appointment of the guardian on April 11, 1961, and the other undivided one half thereof is the property of the plaintiff herein. Since October 19, 1955, the defendant is entitled to as compensation for his labor and services to one half of all the net proceeds from said farming operation, the plaintiff, however, to pay the taxes and insurance, and for improvements.

"As to the monies on deposit in savings hereinbefore referred to, the plaintiff and defendant are entitled to an undivided one half thereof, however, the share of each to be adjusted according to the monies received by each from the proceeds of the farm operation as disclosed by the accounting hereinafter referred to.

"There has been no accounting between the parties hereto, and the plaintiff is entitled to an accounting from the defendant of all the income and outgo of said premises from October 19, 1955, to April 11, 1961, covering all the operations of said premises, and including the farm machinery and livestock, and all transactions relating thereto, and all monies received by each party therefrom. An accounting between the parties prior to October 19, 1955, is barred by the statute of limitation of actions. The defendant is to make such accounting within 30 days from the filing hereof, and upon his failure to do so, or upon his furnishing an inadequate one, the Court will refer this matter to a referee chosen by the parties if they can agree, otherwise to be determined by the Court."

The court accordingly ordered judgment that the father was the owner of the Mower County farm free of any claim or interest on the part of the son; that the father and son are the owners as tenants in common, each owning an undivided one-half, of all the farm machinery, livestock, and grain upon the premises and certain bank accounts. The determination with reference to each owning an undivided one-half interest in the personal property was subject to the following condition: That the share

of each is to be adjusted according to money received by each from the proceeds of the farm operation; that defendant son is entitled to compensation for labor and services in connection with the operation of the farm equal to one-half of all the net proceeds therefrom; plaintiff, however, to pay the taxes and for insurance and improvements. The order further requires that defendant render an accounting to plaintiff within a stated period of "the income and outgo of the farming operations and of all the personal property on said premises, and upon the defendant failing to furnish such accounting, or upon his furnishing an inadequate accounting, the Court shall make a reference of said accounting to a referee to be chosen by the parties hereto, or if the parties do not agree, by the Court."

■ The first point raised by defendant is that the court erred in disregarding the verdict of the advisory jury. He contends that the evidence establishes that there was a valid oral contract to convey the farm. An examination of the record satisfies us that the trial court could not have held other than it did. The conduct of defendant throughout the years was inconsistent with an agreement to convey the land to him. Up to 1950 he reported in his income tax returns that he was on a salary basis. Until the appointment of the guardian, all livestock, machinery, and grain on the farm was assessed in the name of "A. A. Johnson & Son." Defendant signed the tax form listing personal property in the name of A. A. Johnson and son. Defendant did not inform the guardian of the claimed agreement to convey, nor did he at any time tell his brothers or sisters of such an agreement. If anything, the record establishes that the father intended to treat Richard on the same basis as his other sons. In proceedings in the probate court of Faribault County in connection with appointment of a guardian, Richard stated to the probate judge that he never had any definite agreement with the father. When asked how they divided the net proceeds from the farm operation, he said that he was fair and that "he gave Mr. Johnson what he thought was right." He said he paid about $5,000 taxes each year. When asked as to the approximate division of the proceeds of the farm each year, he said that it was on a rental, or fifty-fifty, basis. He paid certain insurance premiums and made capital improvements from farm revenues. At no time prior

to being asked for an accounting did he ever claim an interest in real or personal property on the farm. Richard and his brothers met annually to go over the figures as to what they had earned on their respective farms for the purpose of working out their income tax, and it was assumed Richard had made full disclosure as to his operations. At these meetings Richard failed to disclose savings accounts which he had on hand in various banks. It would appear that in addition to the personal property referred to in the court's findings, bank deposits from farm revenue in defendant's name amounted to $59,604.49. The following is part of the father's testimony with reference to his arrangement with Richard:

"Q. Did Bud ever come to you and demand that he be given a certain percentage of the produce down there on that farm?

"A. I suppose we talked over it. I don't remember his making any demands.

"Q. Did you ever agree to anything?

"A. Sure, agree for things he had to get money for, his car and living.

"Q. Was there ever any definite agreement as to a percentage like there was with the other boys?

"A. No, no different agreement for neither one of them, any of the boys.

"Q. Did Bud ever demand that he would be given an interest in the farm machinery that was being used down there?

"A. No, I figured it that way, fifty-fifty percent interest in it.

"Q. And did he ever make any demand that he have a part interest in livestock down there?

"A. Well, he did have that, too, maybe; didn't on the start but lately we have been figured fifty-fifty all the way through.

"Q. You mean since you got up here to the hospital?

"A. No, since before that quite awhile.

"Q. Then you feel or you had an idea that he should have or was getting a fifty-fifty deal down there, is that right?

"A. That's what we been figuring on lately.

"Q. What do you mean by lately?

"A. Last five, six, seven years because before that time we didn't figure much about it, just worked it and I paid some bills and he paid some.

"Q. You feel then now, for example, assuming that it would be Mr. Werner's duty to make an inventory of what was your property down there, that he should include but fifty percent of the livestock and farm machinery, is that right?

"A. Yes."

The record also indicates that Richard, prior to the suit, informed the guardian that he ought to have the farm on an annual basis of $8,000, and that if he made a settlement with reference to the machinery and livestock, he should be entitled to the $10,000 deposited in the banks.

The principle of law which the trial court applied in determining the issue of defendant's alleged right to specific performance of an oral contract is stated in Ehmke v. Hill, 236 Minn. 60, 69, 51 N. W. (2d) 811, 817, which holds that to warrant specific performance of an oral contract to convey real estate (a) the contract must be established by clear, positive, and convincing evidence; (b) it must have been made for an adequate consideration and upon terms which are otherwise fair and reasonable; (c) it must have been induced without sharp practice, misrepresentation, or mistake; (d) its enforcement must not cause unreasonable or disproportionate hardship or loss to the defendants or to third persons; and (e) it must have been performed in such a manner and by the rendering of services of such a nature or under such circumstances that the beneficiary cannot be properly compensated in damages. It requires no further discussion to demonstrate that on the basis of the criteria set forth in Ehmke v. Hill, *supra,* the court was required to find that there was no valid oral contract between the father and son with relation to the conveyance of the farm.

■ It is next contended that there was no evidence to support the finding of the trial court that the relationship of the parties was that of principal and agent. Defendant argues that "a more natural assumption for the court would have been to find that there was a landlord-tenant relationship between the parties."

It seems to us that once it has been determined that defendant son

was not the owner of the farm and that the father's guardian was entitled to an accounting, it is not of much importance whether the son is called an agent, a tenant, a partner, a trustee, or an employee of the father. The entire picture presented by the record is that the parties conducted their affairs as members of a family without an express understanding as to what the division of their labors and contributions should be. The legal relationship of members of a family who live in a kind of communal arrangement, each sharing according to his needs, without specific agreement as to compensation and relying on mutual faith that each will be justly treated, defies easy classification. Actually, the arrangement must be viewed as a trust or fiduciary relationship to which principles of equity should apply so as to arrive at a fair adjustment of their mutual rights and obligations.

■ The principal error assigned by defendant is that the findings of the court went beyond the issues litigated. This point is stressed in his brief and was ably presented by oral argument. It seems to us that the answer to this claim is found in the theory on which the case was tried. The asserted error is predicated on the assumption that only one issue was before the court and that issue was whether there was an oral contract to convey real estate; it assumes that the issue with reference to the accounting was never litigated. We can only determine the theory upon which a case is tried by an examination of the pleadings, statements of counsel to the court, motions made during the trial, and requests for instructions. To begin with, plaintiff alleged by his complaint that the father was the owner of the 960-acre farm; that his son operated it without a rental agreement; that the son knew that other farms owned by the father were operated by other sons under a lease arrangement and that there was a similar understanding with reference to the Mower County farm; that plaintiff had stocked the farm with livestock and provided machines from which the proceeds of the farm were produced; that at no time did defendant invest his own money in the farming operation; and that the father is the owner of all the personal and real property, including bank accounts. The complaint asks for "an accounting from defendant and a determination that plaintiff is the owner" of the farm and personal property subject to whatever claim the defendant son may have

for services in operating the farm. The answer alleges that in 1940 defendant went upon the premises as the grantee of plaintiff and has since operated the same as his own property. As a counterclaim, defendant alleged he was entitled to specific performance by way of a conveyance of the property pursuant to an alleged oral contract to purchase real estate.

On the basis of these pleadings, a preliminary conference was had with the trial court prior to trial. At that time plaintiff moved for judgment on the pleadings asserting that the alleged contract to convey was void under the statute of frauds (Minn. St. 513.04 and 513.05). After this motion was denied, counsel for plaintiff moved the case for trial and informed the court that the action was "equitable in its nature, and as far as we are aware, there are no jury issues." Counsel for defendant was of the view that there were "fact questions to be determined by the jury * * * [as to] the relationship of the parties." From our examination of the record it appears that defendant's theory of the trial was expressed in this statement:

"Well, it seems to me the fact questions to be determined by the jury would be the question of what was the relationship of the parties, and in order for the plaintiff in this action to be entitled to an accounting, or to recover half of the personal property situated on the farm, that he would have to establish the fact that the relationship was that of either landlord and tenant or principal and agent, because * * * the defendant is, in possession of all of this property. Our position is that he is rightfully in possession of it as the owner thereof, and consequently under no obligation to make an accounting, or to part with any of the personal property."

Defendant's counsel then suggested to the court that appropriate questions be submitted to the jury to determine the relationship of the parties. "Was it vendor and vendee, as claimed by the defendant, or was it either principal and agent, master and servant, landlord and tenant. I am not sure which they claim, one of which they must claim on the part of the plaintiff." The court advised counsel that he had called an advisory jury (Rule 39.02, Rules of Civil Procedure) but informed counsel that he would not necessarily be bound by the jury's findings. At that time the

court did not state the particular issue which would be submitted to the advisory jury or form of the interrogatory. In opening his case, counsel for plaintiff explained to the court that the action was for an accounting and that he had the burden to "at least furnish adequate evidence to the Court to make that an issue, and then it will be up to the defendant to put in his defense." We cannot agree with counsel for the defense that they were misled or that they were not aware that the court had before it an accounting action. It seems to us that the record fairly establishes that there were two issues before the court: (1) The action to establish a right to an accounting and a determination of what between the father and son each owed the other; and (2) a determination of whether there was a valid oral agreement to convey real estate. The record does not indicate that the able and experienced counsel were unaware of the kind of a lawsuit they were trying. Plaintiff relied on his right to an accounting. The defense was that plaintiff did not have a right to an accounting because defendant owned the property and was not obligated to him. The record would indicate that both parties rested on the assumption that those issues had been tried. We find no motions by defendant for dismissal or directed verdicts.

At the time the parties rested, the trial court recognized that the record was not satisfactory for the purpose of making a money determination as to what each party owed to the other. He recognized that there had to be additional evidence taken with respect to the accounting and distribution of the property involved. The trial court had in mind the applicable law relating to jury trials (Minn. St. 546.03 and Rule 38.01, Rules of Civil Procedure), relating to an advisory jury (Rule 39.02), and the rule which relates to reference of matters before a referee (Rule 53.02).[1]

---

[1] Minn. St. 546.03 provides: "Issues of law, unless referred as provided by the statutes relating to referees, shall be tried by the court. In actions for the recovery of money only, or of specific real or personal property, or for a divorce on the ground of adultery the issues of fact shall be tried by a jury, unless a jury trial be waived or a reference be ordered. All other issues of fact shall be tried by the court, subject to the right of the parties to

The trial court said: .

"May it be understood that the Court retains jurisdiction of the case to receive additional evidence with respect to the accounting and the distribution of the personal property, not only on the farm, but the deposits and savings in the banks which amounts to fifty thousand dollars."

The trial court, having determined that principles of equity must necessarily apply to the facts in this case, properly retained jurisdiction which would permit him to proceed to determine all of the equities existing between the parties connected with the subject matter of the suit and to grant relief necessary to an entire adjustment of the issues presented on the basis of the theory on which the case was tried.

But apparently defendant would prefer not to have the conflicting claims of the parties adjusted in an equitable proceeding. He feels that there are still issues left undetermined which should be resolved by a new trial. In his brief to the trial court, defendant contends that these issues are:

---

consent, or of the court to order, that the whole issue or any specific question of fact involved therein, be tried by a jury or referred."

The second and third sentences of § 546.03 are superseded in respect to practice and procedure in the district courts by Rules 38.01, 39.01, and 39.02, Rules of Civil Procedure.

Rule 38.01 provides: "In actions for the recovery of money only, or of specific real or personal property, or for a divorce on the ground of adultery, the issues of fact shall be tried by a jury, unless a jury trial be waived or a reference be ordered."

Rule 39.02 provides for advisory jury: "In all actions not triable of right by a jury the court, upon motion or of its own initiative, may try an issue with an advisory jury, or the court, with the consent of both parties, may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right."

Rule 53 refers to the appointment, compensation, powers, and proceedings relating to reference of matters before a referee.

Rule 53.02 provides: "A reference to a referee shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account, a reference shall be made only upon a showing that some exceptional condition requires it."

"(a) What was the reasonable rental value of the farm during each of the six years in question?

"(b) Has the father received such rental in full?

"(c) Has the father paid the taxes, insurance and expense for improvements accruing during said period?

"(d) Are there any overpayments from one to the other during said period that should be refunded?

"(e) Did the periodic annual settlements between the parties constitute full and final settlements up to the dates thereof?"

The best answer to this argument is contained in the trial court's memorandum, in which he points out that in making his findings he never had any such limitations in mind. He said:

"* * * The issues that counsel claim that are still waiting, (B), (C), (D), and (E), should be disposed of by the proposed accounting. The issue set out in subdivision (A) has not been made an issue by the pleadings, and it is unnecessary to try any such an issue.

"An accounting should disclose what there is to divide. The father has received payments from the son, and the son has used from the farm income to support his family and to pay the usual personal expenses incident to maintaining a home. If one has received more than the other, this should be adjusted. If the matter comes back to the Court again because the parties do not agree as to a referee, the Court will appoint one, dividing the expense between the parties."

It seems to us that the foregoing statements of the court correctly state the method of applying equitable principles to the issues in this case.

■ Finally, it is asserted that defendant is prejudiced because he is denied a jury trial on the issue of the reasonable value of his services and improvements to the premises. This point again presupposes that somehow the issues in this case might be resolved by a jury. Here again defendant overlooks the fact that this is an equitable action. The contributions of defendant, including the value of his services, are wrapped up in the other equities and encompassed in the decision of the trial court that each party is entitled to one-half interest of the personal property

and increase thereon.[2] The accounting necessarily involves innumerable transactions continuing over a long period of time, including purchases, expenditures, exchanges, credits, and contributions in work and money, all of which are part of a continuous undertaking. Separate claims of suit cannot well be maintained against any one of such items disconnected from the rest.

Whether an action is of an equitable nature so as to require determination by a court without a jury rests largely in the sound discretion of the trial court. It seems to be fairly well established that actions founded upon confidential and fiduciary relationships are equitable in nature. The apparent existence of a mutual trust and reliance which imposes upon the parties a duty to render a mutual accounting clearly characterizes this case as being one in equity. 1 Am. Jur. (2d) Accounts and Accounting, § 51. This is not a case where a jury could correctly balance and adjust the innumerable items which represent the course of actions and dealings between the parties from which their rights must be determined. Complex and intricate accounts should not be submitted to the jury. 19 Dunnell, Dig. (3 ed.) §§ 9837 and 9838; Johnson Service Co. v. Kruse, 121 Minn. 28, 140 N. W. 118; Shipley v. Bolduc, 93 Minn. 414, 101 N. W. 952; Raymond Farmers Elev. Co. v. American Surety Co. 207 Minn. 117, 290 N. W. 231, 126 A. L. R. 1351; Plunkett v. Lampert, 231 Minn. 484, 43 N. W. (2d) 489; Morton Brick & Tile Co. v. Sodergren, 130 Minn. 252, 153 N. W. 527.

Landgraf v. Ellsworth, 267 Minn. 323, 126 N. W. (2d) 766, should be distinguished. The instant case is not a suit on a contract for recovery of money where the accounting aspect is merely incidental to the main action.

It seems to us that on the basis of the record and on the way in which the case was presented, the trial court did the best he could with this singular case. He had to determine the rights of the parties on the basis of the evidence submitted to him, the conduct and practices of the parties

---

[2] The record indicates that defendant placed complete reliance upon his claim that the plaintiff was not entitled to an accounting and that defendant was the owner of the property. The issue with reference to reasonable value of services and contribution was not raised specifically.

under the circumstances, and determine from all of the inferences and implications which flowed from such circumstances what in the course of their business and family relationships they fairly intended among themselves. Here, we think that on the basis of the evidence adduced at the trial, including usages, customs, and apparent understanding, it was fair for the court to determine that each party was entitled to one-half of the personal property as disclosed by the record. Moreover, we think the court was correct in retaining jurisdiction of the matter as he did, so that in the event the parties could not adjust the matter between themselves by a fair and proper accounting, the matter should be determined pursuant to his subsequent order.

Affirmed.