Lawrence SALITERMAN, Respondent,

v.

Hershel BIGOS, et al., Appellants.

No. C1–83–1768.

Court of Appeals of Minnesota.

July 31, 1984.

Michael D. Schwartz, Stearn, Levine, Schwartz, Liftson, Creighton & Brunin, Minneapolis, for respondent.

Timothy D. Kelly, Mackall, Crounse & Moore, Minneapolis, for appellants.

Heard, considered, and decided by FOLEY, P.J., and SEDGWICK and RANDALL, JJ.

## OPINION

FOLEY, Judge.

Sellers Hershel and Theodore Bigos appeal from a judgment granting buyer Lawrence Saliterman specific performance of a real estate purchase agreement. Bigoses contend that the trial court erred by: 1) ordering specific performance, 2) extending the date for payments, and 3) inadequately compensating them for improvements made to the property during the suit. We affirm.

## FACTS

This case involves the sale of an apartment building. Bigoses bought the building in 1979 for $680,000. The property was encumbered by one mortgage and one contract for deed. Bigoses paid $68,000 in cash, assumed the existing mortgage and contract for deed, and entered into a new contract for deed with the seller for the balance.

In October 1980, Bigoses listed the property with Goldstein & Associates for $950,-000. Eugene Rerat, a Goldstein employee, contacted Saliterman about the property. Saliterman made an oral offer. In response, Rerat drafted a purchase agreement and submitted it to Bigoses' attorney, Joel Seltz, for review. Seltz reviewed and revised the agreement. Bigoses and Saliterman signed the revised agreement and Saliterman paid Bigoses $10,000 in earnest money.

The agreement and first addendum, dated November 5, 1980, listed a $940,000 purchase price to be paid as follows: $10,-000 earnest money, $170,000 at closing, $50,000 on May 15, 1981 and the balance to be carried on contract for deed at 10 percent with a balloon payment on February 6, 1985. The agreement did not *require* Saliterman to assume the underlying financing, but gave him the *option* of doing so when the balloon payment came due on February 6, 1985.

The agreement also gave Saliterman absolute discretion to terminate the deal if he was not satisfied after inspecting the premises and reviewing all documents on the underlying financing. Saliterman was required to give Bigoses notice of termination *in writing* by November 15, 1980. A second addendum, dated November 15, 1980, extended the inspection and approval period to November 20, 1980. Saliterman did not give such notice.

On November 20, 1980, Bigoses met with Robert Levine, Saliterman's attorney, and signed two versions of a third addendum. Both versions of the addendum advanced Saliterman's $50,000 payment from May 15, 1981 to January 31, 1981, the closing date. They also required Bigoses to pay off one of the underlying contracts for deed by closing rather than by June 5, 1981, as required by the contract for deed.

Hershel and Theodore Bigos testified that they instructed their attorney to hold the documents until they could clear up problems on the underlying financing. However, both Saliterman and Levine testified that Rerat delivered the documents to Saliterman for his signature. Saliterman produced the original of one version at trial.

Bigoses testified that they attended the November 20, 1980 meeting to negotiate a new deal rather than to modify the November 5, 1980 agreement. They contend Saliterman withdrew his original offer by sub-

mitting a "counteroffer" before the meeting. However, the trial court found that the alleged counteroffer was a consolidation of the original purchase order and all the addendums. Rerat submitted it to Saliterman sometime in January 1981.

The closing did not take place as scheduled in January 1981. In June 1981, Bigoses finally informed Saliterman that the financing problems were resolved. They told him they were ready to sell if he would pay an additional $50,000. Saliterman sued for specific performance.

### ISSUES

1. Did the trial court abuse its discretion by ordering specific performance of the amended purchase agreement?

2. Did the trial court err by extending payment dates according to the terms of the contract where the sellers' improper refusal to complete the sale delayed closing?

3. Did the trial court adequately compensate the sellers for improvements made to the property during the suit?

### ANALYSIS

#### I.

■ Specific performance is an equitable remedy addressed to the discretion of the court. *Fred O Watson Co. v. U.S. Life Ins. Co. in City of New York,* 258 N.W.2d 776 (Minn.1977). Courts consider five factors in determining whether to grant specific performance of a real estate purchase agreement:

(a) the contract must be established by clear, positive, and convincing evidence;

(b) it must have been made for an adequate consideration and upon terms which are otherwise fair and reasonable;

(c) it must have been induced without sharp practice, misrepresentation, or mistake;

(d) its enforcement must not cause unreasonable or disproportionate hardship or loss to the defendants or to third persons; and

(e) it must have been performed in such a manner and by the rendering of services of such a nature or under such circumstances that the beneficiary cannot be properly compensated in damages.

*Johnson v. Johnson,* 272 Minn. 284, 292, 137 N.W.2d 840, 847 (1965).

Bigoses contend that the trial court erred in granting specific performance because the parties had no enforceable contract. Alternatively, they argue that if there was a contract, it should not be specifically enforced because it did not provide for mutuality of remedies.

Bigoses insist the parties had no contract because Saliterman withdrew his original offer by submitting a counteroffer before the approval period expired November 20, 1980. This argument runs counter to the trial court's findings of fact.

■ The trial court found that the parties agreed to the November 5, 15 and 20 addenda to the original purchase agreement. It found the "counteroffer" was prepared by Bigoses' agents to consolidate the terms of the purchase agreement and the addendums. It was not delivered to Saliterman until some time in January 1981. The court's findings are supported by Saliterman's testimony and the terms of the consolidation agreement. Since the findings are not clearly erroneous, they must stand. Rule 52.01, Minn.R.Civ.P. The parties had an enforceable contract— the original agreement as modified by the three addenda.

■ The fact that the contract limits Bigos' remedy for default by Saliterman to cancellation of the contract does not rule out specific performance. Mutuality of remedy is only one element to consider in determining whether to award specific performance of a real estate contract. Lack of mutuality alone does not render specific performance inequitable. *Hilton v. Nelsen,* 283 N.W.2d 877 (Minn.1979).

## II.

Both the contract and the equities of the case support the trial court's extension of the date for the balloon payment from February 5, 1985 until October 5, 1987.

The first addendum to the purchase agreement provides:

> In the event closing occurs on any date other than January 30, 1981, *payments* due under the contract for deed and the real estate tax pro-ration, the possession date and the adjustment date of operating expenses, shall be adjusted the same number of days forward or back as the closing date.

The trial court moved the monthly payments and the balloon payment back the approximately two years and eight months that closing was delayed.

Bigoses contend that the extension gives Saliterman an unfair windfall because it gives him the benefit of several year's appreciation without the attendant risks and expenses of ownership. However, since Saliterman did not control the property and did not receive rent, tax benefits or other advantages of ownership during the period of the breach, it would be unfair to make him pay for them. Bigoses assumed the risk of appreciation when they improperly suspended the contract to seek a more lucrative arrangement. Any appreciation during the period of the breach is properly allocated to Saliterman.

## III.

Finally, Bigoses contend that they are entitled to $25,000 for improvements made to the property after the contract was formed. The court awarded $10,000, noting that Bigoses' itemization of expenses showed that most of the expenditures were for repair rather than capital improvements. The trial court's finding was not clearly erroneous and the award must stand.

## DECISION

We affirm the decision of the trial court.