STATE of Minnesota, by Hubert H.
HUMPHREY, III, its Attorney
General, Respondent,

v.

ALPINE AIR PRODUCTS, INC.,
et al., Appellants.

No. C8–92–740.

Court of Appeals of Minnesota.

Sept. 15, 1992.

Review Granted Nov. 17, 1992.

**890**

Hubert H. Humphrey, III, Atty. Gen., Tracy M. Smith, Special Asst. Atty. Gen., St. Paul, for respondent.

William A. Erhart, Marvin & Erhart, Anoka, for appellants.

Considered and decided by LANSING, P.J., and PETERSON and AMUNDSON, JJ.

## OPINION

AMUNDSON, Judge.

The state initiated this consumer fraud and antitrust action against appellant Alpine Air Products, Inc. (Alpine), a manufacturer of ozone-producing air purifiers, and its president, appellant William Converse. The trial court found Alpine engaged in false, deceptive and misleading claims about its products and violated Minnesota antitrust law by engaging in vertical price-fixing. Appellants challenge the judgment

and the denial of their new trial motion. We affirm.

## FACTS

On July 3, 1990, the State of Minnesota sued Alpine Air Products, Inc. and its president, William Converse, in connection with their ozone-producing air purifiers. The state alleged violations of Minnesota's false advertising statute, Minn.Stat. § 325F.67 (1990); the Deceptive Trade Practices Act, Minn.Stat. §§ 325D.43–325D.48 (1990); and the Consumer Fraud Act, Minn.Stat. §§ 325F.68–325F.70 (1990). The state also alleged Alpine's vertical price-fixing arrangement was in violation of Minnesota's antitrust law, Minn.Stat. §§ 325D.49–325D.66 (1990).

Alpine is a Minnesota corporation that manufactures and markets portable air purifiers. The air purifiers were designed to emit ozone for the stated purpose of cleaning indoor air, including the removal of smoke, certain chemical gases, pollens, odors, dust, static electricity, bacteria and mold. Ozone is a highly reactive form of oxygen that occurs naturally. Above certain concentrations, ozone can be a respiratory irritant. Ozone exposure can cause chest tightness, chest pain, coughing and reduced lung function.

The state alleged Alpine air purifiers are capable of emitting unsafe levels of ozone. Alpine purifiers have no mechanism for regulating ozone production. The purifiers have a control knob that allows the user to adjust the amount of ozone, but no means of measuring the amount of ozone emitted. Additionally, the purifiers do not have a shutoff or warning mechanism to avoid excessive levels of ozone. Alpine did not warn consumers either that breathing ozone was hazardous or that the machine may emit potentially hazardous levels of ozone. Consumers were advised to set the air purifiers by their sense of smell.

Alpine uses a multilevel, independent sales organization to market the purifiers. Dealers must sign a written contract with Alpine to sell the purifiers at the manufacturer's suggested retail price as a condition of the relationship.

Following a bench trial, the trial court determined appellants violated the consumer protection and antitrust statutes. The court ordered certain injunctive relief including full restitution to consumers, imposed civil penalties of $70,000 and awarded the state $104,165.20 in attorney fees and costs. The court also determined Converse was personally liable.

The trial court denied appellants' motion for a new trial and other post-trial relief. This appeal followed.

## ISSUES

1. Did the trial court err in determining that in a consumer protection case the state must prove its case by a preponderance of the evidence rather that by clear and convincing evidence?

2. Did the trial court err in determining Alpine's vertical price-fixing arrangement was a per se violation of Minnesota antitrust law?

3. Did the trial court err in denying Alpine a jury trial?

4. Did the trial court err in finding the sense of smell test to detect ozone is an unreliable measure for the safe operation of the Alpine air purifier and that the Alpine air purifier produces no positive health benefits?

5. Did the trial court err in directing Alpine to offer complete restitution to consumers?

6. Did the trial court err in ordering Alpine to pay $104,165.20 of the state's costs and attorney fees?

7. Did the trial court err in ordering Alpine to pay a $70,000 civil penalty?

8. Did the trial court err in not allowing Alpine to submit additional testimony to substantiate its claims?

9. Did the trial court err in determining William Converse is personally liable for the compensatory and injunctive relief?

## ANALYSIS

### I. Standard of Proof

■ Alpine argues the trial court erred in determining its alleged violations of the false advertising statute, the Deceptive Trade Practices Act, and the Consumer Fraud Act must be proven by a preponderance of the evidence rather than by clear and convincing evidence. We disagree.

The supreme court reviewed the history of the standard of proof to be applied in fraud cases in *Martin v. Guarantee Reserve Life Ins. Co.*, 279 Minn. 129, 134–37, 155 N.W.2d 744, 747–49 (1968). In earlier cases, the court distinguished between two separate standards of proof for fraud. In a claim for damages based on fraud, preponderance of the evidence was the standard. *Schmeisser v. Albinson*, 119 Minn. 428, 432, 138 N.W. 775, 776 (1912). In cases seeking to avoid the fraudulent effects of a written contract, the standard of proof was clear and convincing evidence. *Id.*

Later the court seemed to alter its view, concluding there was no difference in the quantum of proof required to establish misrepresentation in an action to recover damages or to rescind the contract. *Mandel v. Brooks*, 165 Minn. 490, 491, 206 N.W. 727, 727 (1926). In either case, the court concluded a fair preponderance of the evidence is the correct standard. *Id.* But cf. *Hafner v. Ritzinger*, 256 Minn. 196, 201, 97 N.W.2d 839, 843 (1959) (court appears to reaffirm *Schmeisser*). *Mandel*, however, was reaffirmed by the *Martin* court, which stated:

> While the post-*Mandel* cases have not always been consistent, most have abandoned the distinction and followed the view that a "fair preponderance of the evidence" justifies relief either in a suit for rescission or one for damages based on fraud in the inducement.

*Martin*, 279 Minn. at 136, 155 N.W.2d at 749.

Two years later, without discussing the *Martin* holding, the court appears to have returned to a higher standard of proof. In *Weise v. Red Owl Stores*, 286 Minn. 199, 203, 175 N.W.2d 184, 187 (1970) the supreme court stated:

> Fraud must be proved by clear and convincing evidence, especially where a par-

ty seeks to avoid the effects of a written instrument.

In *Sievert v. LaMarca*, 367 N.W.2d 580, 589 (Minn.App.1985) (common law fraud action), *pet. for rev. denied* (Minn. July 17, 1985), this court concluded:

Whatever the basis for the *Weise* holding, we are aware of no case which has overruled *Martin* on the burden of proof standard. Therefore, we hold that a *fair preponderance of the evidence is the rule in Minnesota for proof of fraud*.

(Emphasis added). *But see Taylor v. Sheehan*, 435 N.W.2d 575, 577 (Minn.App.1989) (court followed *Weise* in applying a clear and convincing standard of proof in an action to rescind a contract), *pet. for rev. denied* (Minn. Apr. 24, 1989).

We reject Alpine's argument that the case law requires violations of the consumer protection statutes be proven by clear and convincing evidence where equitable relief is sought. Even if separate standards of proof apply in fraud cases, it is clear the heightened standard, clear and convincing evidence, only applies in cases involving a written instrument. The present case did not involve a written instrument. Therefore the case law supports application of a preponderance of the evidence standard of proof.

Other jurisdictions are split over the standard of proof in consumer fraud cases. *See Dunlap v. Jimmy GMC, Inc.*, 136 Ariz. 338, 343–44, 666 P.2d 83, 88–89 (App.1983) (clear and convincing evidence standard does not apply in action brought under the Arizona Consumer Fraud Act); *State v. Eddy Furniture Co.*, 386 N.W.2d 901, 903 (N.D.1986) (fraudulent conduct must be proven by preponderance of the evidence in an action brought under false advertising or consumer fraud statute). *But see Munjal v. Baird & Warner, Inc.*, 138 Ill.App.3d 172, 92 Ill.Dec. 809, 818–19, 485 N.E.2d 855, 864–65 (1985) (implying that clear and convincing evidence required to establish fraud under the Illinois consumer fraud act); *Deer Creek Constr. Co. v. Peterson*, 412 So.2d 1169, 1173 (Miss.1982) (clear and convincing evidence required to establish fraud under Mississippi consumer protection statute).

We believe the better-reasoned cases support a preponderance of the evidence standard of proof for these reasons. First, this determination is supported by the language of the statutes. The statutes at issue do not provide for a heightened standard of proof. In numerous instances, the legislature has specifically raised the standard of proof to clear and convincing evidence. *See e.g.*, Minn.Stat. § 253B.09, subd. 1 (1990) ("clear and convincing evidence" required for the judicial commitment of mentally ill or chemically dependent persons); Minn.Stat. § 260.241, subd. 1 (1990) (grounds for the termination of parental rights must be proven by "clear and convincing evidence"). Here the legislature could have, but did not expressly impose a clear and convincing standard of proof. We choose not to judicially create a higher standard of proof.

Second, consumer protection statutes are remedial in nature and are to be liberally construed in favor of protecting consumers. *See Eddy Furniture*, 386 N.W.2d at 903. Consumer protection laws were not intended to codify the common law; rather they were intended to broaden the cause of action to counteract the disproportionate bargaining power present in consumer transactions. *See id.; see also Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 727 (Minn.1983) (the public policy which prompted the consumer fraud act was the protection of innocent customers); *LeSage v. Norwest Bank Calhoun–Isles*, 409 N.W.2d 536, 539 (Minn.App.1987) (the "Consumer Fraud Act is broader than common law fraud"). To require a higher degree of proof would frustrate the legislative intent.

Third, the interests of a defendant in a civil statutory fraud action are not so important as to require a heightened standard of proof, especially where the statutes were designed to protect and enhance the interests of the public. In cases where Congress has not prescribed a standard of proof, the United States Supreme Court has applied a "clear and convincing" stan-

dard of proof where particularly important individual interests or rights were at stake. *See, e.g., Santosky v. Kramer*, 455 U.S. 745, 760–70, 102 S.Ct. 1388, 1403, 71 L.Ed.2d 599 (1982) (proceeding to terminate parental rights). In cases involving statutory fraud, however, the court has concluded a preponderance of the evidence standard is appropriate. *See, e.g., Grogan v. Garner*, 498 U.S. 279, ——, 111 S.Ct. 654, 660, 112 L.Ed.2d 755 (1991) (nondischargeability in bankruptcy of debt procured by fraud); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390, 103 S.Ct. 683, 691–92, 74 L.Ed.2d 548 (1983) (fraud provisions of federal securities laws.)

Accordingly, we hold the trial court properly determined Alpine's violations of the consumer protection statutes must be proven by a preponderance of the evidence.

## II.   *Vertical Price–Fixing*

■ Alpine argues the trial court erroneously determined its actions were per se [1] violations of Minnesota antitrust law, Minn. Stat. §§ 325D.49–66. We disagree.

There is no dispute Alpine engaged in vertical price-fixing with its dealers. Vertical price fixing occurs when a seller and a buyer agree to set the price at which the buyer may resell the product. Lawrence Sullivan, *Handbook of the Law of Antitrust* 277 (1977). Alpine dealers were required to sign written contracts with Alpine to sell the air purifiers at the manufacturer's suggested retail price as a condition of the relationship.

The Minnesota Antitrust Act of 1971 codified much of the pre–1971 federal case law and follows the provisions of the Sherman Act, 15 U.S.C.A. §§ 1–7 (West Supp. 1991), to a significant degree. Neil Hamilton, *Recent Developments in Minnesota Antitrust Law*, 8 Wm. Mitchell L.Rev. 741, 753–54 (1982).

Federal courts have long held that vertical price-fixing agreements, because of their manifestly anticompetitive effect are per se illegal. *See e.g., Business Elecs. v. Sharp Elecs.*, 485 U.S. 717, 723–24, 108 S.Ct. 1515, 1519, 99 L.Ed.2d 808 (1988); *Beer Wholesalers, Inc. v. Miller Brewing Co.*, 426 N.W.2d 438, 442 (Minn.App.1988) ("[u]nder federal antitrust law, vertical resale price maintenance is per se illegal"), *pet. for rev. denied* (Minn. Aug. 24, 1988), *cert. denied*, 489 U.S. 1039, 109 S.Ct. 1173, 103 L.Ed.2d 235 (1989). Here the issue is whether such arrangements are prohibited under Minnesota antitrust law. Minnesota antitrust law provides:

> A contract, combination, or conspiracy between two or more persons in unreasonable restraint of trade or commerce is unlawful.

Minn.Stat. § 325D.51. Per se violations of Minnesota antitrust laws are enumerated in Minn.Stat. § 325D.53. Subdivision 1 provides in part:

> *Without limiting section 325D.51*, the following shall be deemed to restrain trade or commerce unreasonably and are unlawful:
>
> (1) A contract, combination, or conspiracy *between two or more persons in competition:*
>
> (a) for the purpose or with the effect of affecting, fixing, controlling or maintaining the market price, rate, or fee of any commodity or service;
>
> (b) affecting, fixing, controlling, maintaining, limiting, or discontinuing the production, manufacture, mining, sale or supply of any commodity, or the sale or supply of any service, for the purpose or with the effect of affecting, fixing, controlling, or maintaining the market price, rate, or fee of the commodity or service.

(Emphasis added.) Inclusion of the language "between two or more persons in competition" indicates vertical price-fixing

---

1. The concept of per se violations allows the court to forego any inquiry into the actual anticompetitive effects of the alleged violations. The United States Supreme Court has stated:

    [T]here are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm.

    *Northern Pac. Ry. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958).

agreements are excluded from the reach of this subsection.[2]

While section 325D.53 lists certain per se violations, it does so "[w]ithout limitation." Therefore actions not included in section 325D.53 may still receive per se treatment under Minn.Stat. § 325D.51. Thus the specific list in section 325D.53 does not limit the scope of section 325D.51, but rather serves only to ensure that its enumerated activities will always receive per se scrutiny regardless of federal decisions under the Sherman Act. *See* Note, *Minnesota Antitrust Law of 1971*, 63 Minn.L.Rev. 907, 935 (1979).[3]

Minnesota courts have consistently held that Minnesota antitrust law is to be interpreted consistently with the federal courts' construction of federal antitrust law. *See Keating v. Philip Morris, Inc.*, 417 N.W.2d 132, 136 (Minn.App.1987) (citing *State v. Duluth Board of Trade*, 107 Minn. 506, 517, 121 N.W. 395, 399 (1909) (it is proper to look for guidance in construing Minnesota statutes to decisions made under similar federal statutes)).

There are advantages to relying on federal precedent. First, such reliance provides a large body of precedent on which state courts can draw, promoting consistency and predictability in the interpretation of antitrust laws. Hamilton, *Recent Developments* at 746 n. 23. Second, fashioning new principles and applications of antitrust law could strain the resources and capabilities of state courts. Reliance on the well-developed principles and theories of federal antitrust law minimizes this possibility. *Id.* However, there are also disadvantages to this approach. First, one purpose of state antitrust laws is to develop state policies addressing local problems and concerns. *Id.* Second, federal precedents may be confused, contradictory, or inapplicable, and therefore not helpful. *Id.*

■ We believe policy considerations suggest following federal precedent for substantive offenses. Without uniform construction between state and federal antitrust laws, businesses will have a difficult time predicting the antitrust implications of their business decisions. Enforcement of state and federal antitrust laws will also be aided by a policy of uniform interpretation. Therefore we conclude Minnesota antitrust law should be interpreted consistently with federal court interpretations of the Sherman Act unless state law is clearly in conflict with federal law.

Moreover, the per se rule is justifiable with regard to vertical restraints. Vertical price-fixing is almost always pernicious because an unfair benefit is conferred on the seller or the dealer to the detriment of consumers. Empirical studies conducted by the Department of Justice show that vertical price-fixing raises retail prices by approximately 19 percent. *Fair Trade: Hearings on H.R. 1253 before the House Committee on Interstate and Foreign Commerce*, 86th Cong., 1st Sess. 506–07 (1959) (testimony of Robert Bicks, First Assistant of the Antitrust Division of the Department of Justice).

■ Almost every instance of vertical price-fixing is harmful to the operation of our free market economy due to decreased competition and increased prices. The public is entitled to whatever advantage may be derived from competition. We believe the possibility that some legitimate business purpose will be achieved through vertical price-fixing is minimal. Therefore vertical price-fixing must be considered a per se violation of Minnesota antitrust law.

Lastly, we note that none of Alpine's defenses are valid. Alpine's vertical price-fixing agreements are per se violations of Minnesota antitrust law, thereby negating

---

**2.** Certain activities such as resale price maintenance that have achieved per se status under section 1 of the Sherman Act are not included in Minn.Stat. § 325D.53. The absence of resale price maintenance may be explained by the fact that in 1971 Minnesota still had a fair trade act that allowed vertical price-fixing in some circumstances. Minn.Stat. §§ 325.08–325.14.

Minnesota's fair trade act was repealed in 1978. 1978 Minn.Laws ch. 473, § 1.

**3.** Additionally, the violations enumerated in section 325D.53 are separately listed because they are deemed worthy of prosecution as felonies if willfully committed. *See* Minn.Stat. § 325D.56, subd. 2.

any need to prove motive or actual effect of the restraints. *See Business Elecs.*, 485 U.S. at 723, 108 S.Ct. at 1519. Accordingly, we hold the trial court did not err in determining Alpine's vertical price-fixing arrangement was a per se violation of Minnesota antitrust law.

### III.  Right to a Jury Trial

■ Alpine argues the trial court erred in denying it a jury trial. We disagree.

The right to a jury trial is provided by the Minnesota Constitution:

> The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy.

Minn.Const. art. I, § 4. Further, Minn. R.Civ.P. 38.01 provides:

> In actions for the recovery of money only, or of specific real or personal property, the issues of fact shall be tried by a jury, unless a jury trial is waived or a reference is ordered.

This rule neither enlarges nor diminishes the historical right to a jury trial. *Indianhead Truck Line, Inc. v. Hvidsten Transp. Inc.*, 268 Minn. 176, 192, 128 N.W.2d 334, 346 (1964). In *Rognrud v. Zubert*, 282 Minn. 430, 433–34, 165 N.W.2d 244, 247 (1969) the supreme court interpreted the constitutional right to a jury trial:

> We have often held that the only actions in which Minn. Const. art 1, § 4 * * * and Rule 38.01 * * * guarantee the right to a jury trial are those which were conceived of as 'legal' so that such a right existed with respect to them, at the time the Minnesota constitution was adopted. The language of Rule 38.01 is merely an attempt to list those actions which were then, and are now, thought of as 'legal' as distinguished from 'equitable.'

(Citations omitted).

■ The controversy's nature and character is determined from all the pleadings and that determination governs the right to a jury trial. *Landgraf v. Ellsworth*, 267 Minn. 323, 326, 126 N.W.2d 766, 768 (1964). If a plaintiff's claim is one for the recovery of money, the Minnesota Constitution assures a right to a jury trial.

*Olson v. Aretz*, 346 N.W.2d 178, 181 (Minn. App.1984), *pet. for rev. denied* (Minn. Oct. 30, 1984). Equitable claims, however, are not triable as a matter of right. *Georgopolis v. George*, 237 Minn. 176, 186, 54 N.W.2d 137, 143 (1952). If a jury trial is not a matter of right, it is within the trial court's discretion to submit the case to a jury. *Banning v. Hall*, 70 Minn. 89, 93, 72 N.W. 817, 818 (1897); *see also Johnson v. Johnson*, 272 Minn. 284, 298, 137 N.W.2d 840, 850 (1965) (whether action is equitable rests within trial court's discretion).

This action was entirely equitable in nature. The state's primary objective was to obtain injunctive relief and put an end to Alpine's conduct that misled consumers, threatened their health and inhibited competitiveness in the marketplace. Injunctive relief is primarily equitable in nature. *Federal Trade Comm'n v. Kitco*, 612 F.Supp. 1280, 1281 (D.Minn.1985) (no jury trial right exists in consumer fraud law enforcement action by the FTC seeking injunctive relief); *see also L.L. Bean, Inc. v. Drake Publishers, Inc.*, 629 F.Supp. 644, 647 (D.Me.1986) (no jury trial right in private action for equitable relief under the Maine Deceptive Trade Practices Act); *State ex rel. Douglas v. Schroeder*, 384 N.W.2d 626, 629–30 (Neb.1986) (no jury trial right in action by attorney general seeking an injunction, restitution and civil penalties under the Nebraska Consumer Protection Act). The second type of relief sought by the state against Alpine was restitution. Restitution is a traditional equitable remedy. *Kitco*, 612 F.Supp. at 1281. Therefore we hold the trial court properly denied Alpine a jury trial.

### IV.  Findings of Fact

■ Alpine argues the trial court erred in finding (1) the sense of smell test to detect ozone is not a reliable measure for the safe operation of the air purifier; and (2) no positive health benefits are obtained by using the purifier. We disagree.

In all actions tried without a jury, findings of fact, whether based on oral or documentary evidence, shall not be set

aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Minn.R.Civ.P. 52.01. "Clearly erroneous" means manifestly contrary to the weight of the evidence as a whole or not reasonably supported by the evidence as a whole. *Hubbard v. United Press Int'l*, 330 N.W.2d 428, 441 (Minn.1983).

Alpine and the state presented numerous expert witnesses to support or contradict Alpine's claims regarding its air purifiers. The expert's opinions differed, and the trial court determined the greater weight of the evidence supported the state's experts. The evidence in the record supports the trial court's findings. Accordingly, the trial court's findings are not clearly erroneous.

## V. Restitution

■ Alpine argues the trial court erred in ordering complete restitution to all purchasers of the air purifiers.[4] The trial court held Alpine must either offer a refund up to $400 to every purchaser or exchange the ozone-producing plate for a smaller plate at no charge. Alpine, however, argues this is an overly broad remedy and that it cannot comply if it is to stay in business. We find Alpine's argument unpersuasive.

■ Restitution is an equitable remedy. *Kitco*, 612 F.Supp. at 1281. The granting of equitable relief is within the sound discretion of the trial court; only a clear abuse of discretion will result in reversal. *Nadeau v. County of Ramsey*, 277 N.W.2d 520, 524 (Minn.1979).

Alpine's fraud infected every single sale of its air purifiers. Therefore we conclude the trial court did not err in ordering complete restitution to all purchasers of the Alpine air purifiers.

---

**4.** Although there is no express authority for the attorney general's action for restitution, common law has recognized that under the doctrine of *parens patriae* ("parent of the country") a state may maintain a legal action on behalf of

## VI. Attorney Fees

■ Alpine argues the trial court erred in ordering it to pay $104,165.20 of the state's costs and attorney fees. We disagree. The award of costs and attorney fees in this case was specifically authorized by statute. *See* Minn.Stat. § 8.31, subd. 3a (1990) (the court may award "costs and disbursements * * * and reasonable attorney's fees"). An award of attorney fees will not be reversed absent an abuse of discretion. *Becker v. Alloy Hardfacing & Eng'g Co.*, 401 N.W.2d 655, 661 (Minn. 1987).

The trial court was familiar with all aspects of this case and was in the best position to judge the reasonableness of the award. The trial court carefully considered the following factors: (1) the time and labor involved; (2) the nature and difficulty of the responsibility assumed; (3) the amount involved and the result obtained; (4) fees customarily charged for similar legal services; and (5) the experience and reputation of counsel. *State v. Paulson*, 290 Minn. 371, 373, 188 N.W.2d 424, 426 (1971). Under these circumstances, the trial court acted within its discretion and we therefore affirm the award of costs and attorney fees for the state.

## VII. Civil Penalty

■ Alpine argues the trial court erred in ordering it to pay a $70,000 civil penalty. We disagree. A civil penalty may be imposed "in an amount to be determined by the court." Minn.Stat. § 8.31, subd. 3 (1990). The state is entitled to civil penalties up to $25,000 for each violation of the Consumer Fraud Act, the false advertising statute and the Deceptive Trade Practices Act. *Id.* The state is also entitled to a civil penalty up to $50,000 for each violation of the antitrust law. Minn.Stat. § 325D.56, subd. 1 (1990).

■ The court should consider the following factors in determining the size of a

---

its citizens, where the citizens have been harmed and the state maintains a quasi-sovereign interest. *State by Humphrey v. Ri–Mel Inc.*, 417 N.W.2d 102, 112 (Minn.App.1987), *pet. for rev. denied* (Minn. Feb. 17, 1988).

civil penalty: (1) the good or bad faith of the defendant; (2) the injury to the public; (3) the defendant's ability to pay; and (4) the desire to eliminate the benefits derived by the violation. *United States v. Reader's Digest Ass'n,* 662 F.2d 955, 967 (3d Cir.1981), *cert denied,* 455 U.S. 908, 102 S.Ct. 1253, 71 L.Ed.2d 446 (1982).

We reject Alpine's argument that the civil penalty is unjustified because the trial court did not find it acted in bad faith. Bad faith is only one element for the court to consider. Here the most significant factor supporting the penalty was the injury to the public. Alpine sold over 140,000 air purifiers without disclosing the units can emit dangerous levels of ozone. The harm was increased because Alpine marketed the air purifiers to vulnerable consumers, that is persons with respiratory problems. Additionally the civil penalty is necessary to deter Alpine from continuing to misrepresent its products. The record shows the trial court thoroughly and carefully considered all relevant factors. Therefore we conclude the court acted within its discretion in ordering the civil penalty.

### VIII.  Submission of Additional Testimony

■ Alpine argues the trial court erred by not allowing the submission of additional testimony regarding a method for substantiating its claims. We disagree. On a motion for a new trial in an action tried without a jury, the court may open the judgment and take additional testimony. Minn.R.Civ.P. 59.01.

The trial court required Alpine to affirmatively disclose in all sales presentations and operating instructions that the air purifiers are capable of emitting ozone in excess of .05 ppm, that neither the instructions nor the purifier itself ensure against excessive accumulations, and that the user should avoid operating the machine in the presence of human beings.

Alpine states these requirements were imposed despite the fact it made modifications in the purifiers and revised the owners' instructions. Alpine believes there should be a mechanism established for it to later substantiate its after-modification claims so that the injunctive relief imposed can be modified to reflect changes.

We find the trial court appropriately refused to allow further testimony. Although Alpine claims to have made product modifications, it does not claim to have eliminated ozone from the product or to have developed a mechanical means to limit ozone production. The trial court should not be put in a position where it must perpetually oversee Alpine's production techniques and advertisements by entertaining repeated requests for rulings on whether particular modifications make particular warnings unnecessary.

As the trial court explained, whether Alpine is in compliance with its order, is a matter of judgment and risk on the part of Alpine. Alpine can make technical changes and run the risk of discontinuing warnings. The state will then have to make a judgment as to whether to sue to enforce the warning requirements.

Therefore we hold the trial court did not err in refusing to allow Alpine to submit additional testimony.

### IX.  Personal Liability of Converse

■ Alpine argues the trial court erred in holding Alpine's president and founder William Converse personally liable. We disagree. In the absence of a finding of bad faith, Alpine argues Converse should not be held personally liable for the civil penalties, restitution or attorney fees. Alpine does not cite any authority for this position.

Corporate officers have been held personally liable in business contexts similar to the present case. For example, in *Kitco* an officer misrepresented material facts to induce purchasers to invest in the corporation and the court concluded the officer was liable based on his direct participation in the deceptive sale. *Kitco* 612 F.Supp. at 1292–93. Moreover, in *Ford Motor Co. v. B & H Supply, Inc.,* 646 F.Supp. 975, 997 (D.Minn.1986), the individual officers were held personally liable for trademark infringement and unfair competition because

the officers owned, controlled and actively participated in the business of the corporation. Finally, this court concluded a corporate officer can be held personally liable for the conversion of a third person's property if the officer actually participated or acquiesced in it. *Holzer v. Tonka Bay Yachts & Marine Sales, Inc.*, 386 N.W.2d 285, 287 (Minn.App.1985), *pet. for rev. denied* (Minn. June 30, 1986).

Similarly, in the present case, Converse was both intimately involved in all aspects of Alpine's business and responsible for the design and use of the air purifiers and for all of Alpine's promotional claims. Accordingly, we conclude the trial court did not err in holding Converse personally liable.

## DECISION

The trial court did not err in (1) determining violations of the consumer protection statutes must be proven by a preponderance of the evidence; (2) determining vertical price-fixing agreements are a per se violation of Minnesota antitrust law; (3) denying Alpine a jury trial; (4) making its findings of fact; (5) granting restitution; (6) awarding the state its costs and attorney fees; (7) imposing a civil penalty; (8) denying the admission of additional testimony; and (9) holding Converse personally liable.

Affirmed.