HANSEN, Circuit Judge,
concurring in part and dissenting in part.
I respectfully dissent from that portion of the court’s opinion wherein it affirms the district court’s denial of Nissan’s request for specific performance. I readily concur in the balance of the court’s opinion.
The court concludes that “the district court recognized its obligation to balance the equities present in this case ... and appropriately balanced the equities in deciding whether to award an equitable remedy.” (Supra at 750.) The opinion does not recite any actual balancing performed by the district court, however, because the district court did not balance anything. Rather, the district court considered Minnesota’s disfavor of exclusivity clauses in general and the fact that Nissan, as the drafter of the contract, could have provided a remedy other than termination but chose not to do so. The district court did not consider, let alone balance, any of the factors that courts look to in addressing a request for specific performance, an inquiry that should consider all of the facts of the particular case. See, e.g., Landmark Holding Co. v. WLW Real Estate, L.L.P. (In re Landmark Holding Co.), 286 B.R. 377, 385 (Bankr.D.Minn.2002) (citing Johnson v. Johnson, 272 Minn. 284, 137 N.W.2d 840, 847 (1965) and considering the following five factors in assessing whether to order specific performance: 1) a clear contract; 2) made for adequate consideration with fair and reasonable terms; 3) induced without sharp tactics, mistake, or misrepresentation; 4) enforcement of which does not produce disproportionate hardship; and 5) for which the beneficiary cannot be properly compensated in damages).
*753 The two factors upon which the district court relied do not support its conclusion. Minnesota’s general dislike of exclusivity clauses does not militate against granting specific performance in this case because, as this court finds, ante at 751-52, the Minnesota statute does not prohibit the use of exclusive facility clauses. The statute only prevents a party from terminating a dealership agreement on the basis that the dealer has established another line in the same facility. Minn.Stat. § 80E.07, subd. 1(c). By requesting that Metro be required to specifically perform the contract it agreed to, Nissan is not seeking to terminate the agreement. Rather, Nissan is seeking to continue it according to its agreed upon terms. See, e.g., Summit House Co. v. Gershman, 502 N.W.2d 422, 424 (Minn.Ct.App.1993) (“By pursuing specific performance to a determinative conclusion, the [plaintiffs] chose not to cancel the contract, but to affirm it.”). Because the Minnesota legislature chose to allow exclusive facility clauses, but limited the remedy for breach of such a clause by preventing a manufacturer from terminating a dealership agreement solely on the basis of that breach, one can logically and legitimately argue that Minnesota favors enforcing such clauses by any means other than terminating the dealership, including specific performance of the clause.
The district court also vaguely discussed the fact that Nissan drafted the contract. Although equity will not help those who do not help themselves, that maxim does not readily apply to this situation, where the drafting party’s only failure was not specifying a remedy for a breach. To deny specific performance to the party drafting a clear, fair agreement because that party failed to specify an adequate legal remedy seems contrary to the very purpose of the equitable remedy of specific performance. Specific performance is only available where a party does not have an adequate remedy at law. It seems to me quite circular to then deny specific performance on the basis that the party failed to draft an adequate legal remedy. I suggest that equitable jurisprudence would look much different if drafting inadequacies alone rendered a party ineligible for such a remedy.
As I see it, the more appropriate maxim to apply between these two merchants of automobiles is: a deal is a deal. The Franchise Agreement, in a separate addendum entitled “Exclusivity Provisions,” very clearly provided:
The only line-make of new, unused motor vehicles which Dealer shall display and sell at the Dealership Facilities shall be the Nissan line and make of motor vehicles. Dealer shall not conduct any dealership operations for any other make or line of new or unused vehicles from the Dealership Facilities.
(Add. at 71.) Metro is owned by the Luther family, which, in one form or another, owns more than twenty separate dealerships. (J.A. at 159, 187.) Although Nissan drafted the agreement, both parties were and are sophisticated. Metro very clearly agreed not to sell other lines of new vehicles from the Dealership Facility. Yet, just over a year after entering the Franchise Agreement, Metro began negotiations with Kia to sell new Kia vehicles from the Nissan Dealership Facility. Upon learning of the negotiations, Nissan informed Metro twice, in writing, that Metro would be violating the Franchise Agreement if it entered into its proposed agreement with Kia. Metro did not try to come to an agreement with Nissan or to seek a judgment declaring the exclusive facility clause unenforceable as violative of Minnesota law. Instead, Metro went full speed ahead with the Kia deal and, to the court’s most recent knowledge, is selling new, unused Kia vehicles from the Nissan *754 facility to this day. A deal is a deal, and Metro should be held to its deal with Nissan.
As for Metro’s argument that Nissan should be precluded from seeking the equitable remedy of specific performance because Nissan’s hands are soiled by its violation of sections 80E. 12(e) & 80E.135, I find the argument to be a case of “the pot calling the kettle black.” Metro blatantly and openly breached the contract it made with Nissan, a fact not ignored by the district court. (Order at 6 (“Metro does not oppose Nissan’s request for a declaratory judgment, presumably because it is clear that Metro is in breach of the exclusivity provision of the Franchise Agreement.”).) Only after Metro rejected all of Nissan’s attempts to work out a solution did Nissan ask Metro to agree to an amendment that would allow Nissan to terminate the dealership if Metro continued to violate the exclusive facility clause. For Metro to argue now that Nissan had unclean hands because it violated the state statute seems, at a minimum, disingenuous, coming as it does from the one who committed the first legal wrong. It is, after all, only Metro itself who stands in breach of the contract.
Looking at the unique aspects of the case, the equities clearly weigh in favor of Nissan. Nissan entered into an unambiguous contract with Metro. There are no allegations that the contract clause was the result of overreaching or that it is otherwise unfair or unjust. Further, by contract and by statute, Nissan cannot terminate the franchise unless Metro materially breaches some other clause that the Minnesota statute does not address as an inappropriate basis for termination. The contract’s exclusive facility clause is clearly legal under Minnesota law, and it is clearly material to Nissan, who continues to be damaged by Metro’s ongoing breach of the agreement. Specific performance would disadvantage Metro only in the sense that it would require Metro to live up to the bargain it made, or its owners would have to sell Kias out of one of their other numerous locations not encumbered by valid agreed upon restrictions. At a minimum, I would remand the case to the district court to consider the proper factors, beyond the facts that the Minnesota legislature disfavors exclusivity clauses in general and that Nissan drafted the agreement without providing a liquidated damages remedy.