Christopher P. SCHERMER, et al., on behalf of themselves and all other similarly situated, Appellants,

v.

STATE FARM FIRE AND CASUALTY COMPANY, et al., Respondents.

Nos. A04–2054, A04–2088.

Court of Appeals of Minnesota.

Sept. 6, 2005.

Lawrence R. King, T. Joseph Snodgrass, Shawn M. Raiter, Larson King, LLP, St. Paul, Minnesota; and Charles N. Nauen, Robert K. Shelquist, Lockridge Grindal Nauen P.L.L.P., Minneapolis, Minnesota; and Charles S. Zimmerman, J. Gordon Rudd, David M. Cialkowski, Zimmerman Reed, P.L.L.P., Minneapolis, Minnesota; and Rhett A. McSweeney, McSweeney & Fay, Minneapolis, Minnesota, for appellants.

Todd A. Noteboom, William L. Greene, Daniel Oberdorfer, Douglas R. Boettge, Monica L. Davies, Leonard, Street and Deinard, Professional Association, Minneapolis, Minnesota, for respondents.

Mike Hatch, Attorney General, Brian Dockendorf, Assistant Attorney General, St. Paul, Minnesota, for amicus State of Minnesota.

Sharon L. Van Dyck, Schwebel, Goetz & Sieben, P.A., Minneapolis, Minnesota; and Jeffrey D. Bores, Chestnut & Cambronne, P.A., Minneapolis, Minnesota, for amicus Minnesota Trial Lawyers Association.

Considered and decided by PETERSON, Presiding Judge; MINGE, Judge; and PARKER, Judge.

## OPINION

PARKER, Judge.*

In this class action suit, appellants challenge the district court's grant of summary judgment in favor of respondent, arguing that the district court erred by (1) rejecting appellants' argument that respondents violated Minn.Stat. § 72A.20, subd. 13 (2004) as a matter of law; (2) holding that no private right of action exists under Minn.Stat. § 72A.20, subd. 13 (2004); and (3) holding that the filed rate doctrine bars appellants' claims. Because no private right of action exists under Minn.Stat. § 72A.20, subd. 13 (2004), and because the filed rate doctrine bars appellants' claims, we affirm. Therefore, we need not address appellants' argument that respondents violated Minn.Stat. § 72A.20, subd. 13 (2004), as a matter of law.

## FACTS

On May 8, 1997, respondent State Farm Fire and Casualty Company and State Farm General Insurance Company (State Farm) filed an initial version of a "Utilities Rating Plan" (URP) with the Department of Commerce (DOC) for homeowners and farm insurance policies. The URP had an effective date of June 15, 1997. It based a rate differential on the age of the oldest of the electrical, plumbing, and heating/cooling system. On May 22, 1997, the DOC notified State Farm that its filing had been reviewed and had to be amended to comply with Minn.Stat. § 72A.20, subd. 13. Pending that amendment, the filing was held in suspense. On June 5, 1997, State Farm submitted a revised URP. Under this revision, homeowners would be placed in different rate categories based on the age of the electrical system only. On June 10, 1997, the DOC informed State Farm that the URP required further amendment. Pending that amendment, the URP continued to be held in suspense. On June 27, 1997, State Farm submitted a further revision to the URP in response to this

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

request. On July 18, 1997, the DOC again informed State Farm that further amendments were required to the URP and, pending those amendments, the filing would continue to be held in suspense. On July 23, 1997, the DOC accepted the URP for use effective August 1, 1997.

The accepted URP placed insured homeowners in different rating categories based on the age of the electrical system. A home with a new system would be eligible for a discount from the base premium; a home with an older system would be subject to an additional charge over the base premium. State Farm used the age of the home as a surrogate for the age of the home's electrical system as part of the development of a rating plan that assigned rates based on the age of the homeowner's electrical system. At all times during this process, State Farm relied on its original actuarial exhibit that utilized all noncatastrophic losses (not just those related to electrical systems) as its support for the URP. Approximately one year later, in September 1998, State Farm filed a modified URP with the DOC. Under the revised URP, policyholders could more easily avoid the surcharge by making updates to their electrical system. The September 1998 filing also combined the three rating categories associated with the oldest electrical systems into a single 40–plus year category subject to a six-percent premium.

In January 2001, a private citizen filed a complaint with the DOC about State Farm's URP rating classification. In response to this complaint, the DOC began an investigation. The investigation took approximately 19 months and was led by Martin Fleischhacker. Fleischhacker reviewed the 1997 actuarial data that was supplied in support of the URP and found that the URP was based on the age of the primary structure, not the age of the electrical system. He also found that it did

not include information demonstrating the risk of loss due to the age of the electrical system. He believed that when an insurer places homeowners in different rating categories based upon the age of a utility system, such as an electrical system, any differential in rates must be limited to differential in losses caused by or related to the age of that particular system. It was clear that the actuarial exhibits submitted by State Farm in 1997 indicated that the differentials in URP charges and discounts had been calculated using all noncatastrophic losses, not just those caused by aging electrical systems. Fleischhacker concluded that the URP violated Minn.Stat. § 72A.20, subd. 13.

State Farm disagreed with Fleischhacker's interpretation of the statute. In October 2002, Fleischhacker sent State Farm a letter attaching a "DRAFT: CEASE AND DESIST ORDER AND NOTICE OF RIGHT TO HEARING." The letter alleged that State Farm did not track and had no loss data to show that the age of the structure's electrical system affects the risk of loss. It alleged that State Farm tracked the age of the insured's dwelling and that its loss data were correlated with the age of the dwelling. Finally, it concluded that the URP was based on the age of the primary structure, which is prohibited by Minn.Stat. § 72A.20, subd. 13(b).

In December 2002, the DOC entered into a settlement with State Farm which was effectuated by a consent order. The order set forth the allegations of wrongdoing. It noted that State Farm denied those allegations. State Farm acknowledged that it had been advised of its right to a hearing and to appeal from any adverse determination after a hearing but expressly waived those rights. The consent order contained the following: "Both the Commissioner and Respondent agree that this Order represents an informal set-

tlement and that there has been no hearing, findings of fact, or conclusions of law with respect to the allegations of the Commissioner." Under the terms of the consent order, State Farm agreed to discontinue the surcharge portion of the URP for one year while continuing to offer discounts. It retained the right to seek approval of the rates thereafter. It also agreed to reimburse the department $75,000 for its investigative costs.

Appellants Christopher Schermer, John Smith, Marjorie Smith, and Reverend Albert Gallmon, on behalf of themselves and all others similarly situated (the class), filed their first class action on December 6, 2002, within days of the announcement of the consent order. The class states that this lawsuit was "filed to force State Farm to pay the Class back for State Farm's violation of state law." The class sought a refund of all surcharges collected by State Farm from 1997–2002 under the URP. The surcharges totaled nearly $20,000,000. Due to procedural matters and court rulings, the operative complaint is the class's third amended class action complaint. The class alleged the following eight counts in this complaint:

· Count 1: Rescission of Unlawful Contract Terms

· Count 2: Breach of Contract and Duty of Good Faith and Fair Dealing

· Count 3: Violation of Prevention of Consumer Fraud Act Minn.Stat. § 325F.69, subd. 1 (as to the public)

· Count 4: Violation of Prevention of Consumer Fraud Act Minn.Stat. § 325F.69, subd. 1 (as to the DOC and the Commissioner of Commerce)

· Count 5: Unreasonable Restraint on Trade or Commerce in Violation of Minnesota Antitrust Law Minn.Stat. § 325D.53, subd. 2(1) to (4) and § 325D.03, subd. (1)(1)(a)

· Count 6: Violation of the Act Against Unfair Discrimination and Competition Minn.Stat. § 325D.03 and § 325D.072

· Count 7: Fraud by Nondisclosure

· Count 8: Filed Rate Doctrine

Each count in the complaint was based on State Farm charging an allegedly improper rate, a rate that was approved by the Commissioner of Commerce in 1997 and then subject to a consent order in 2002. In its third amended complaint, the class summarized their claim in a section entitled "Nature of Action":

This is a class action against Defendants State Farm Fire and Casualty Company and State Farm General Insurance Company (referred to collectively as "STATE FARM"), for redlining in Minnesota *by dramatically charging higher premiums for homeowners and farm/ranch insurance for older homes, farms, ranches, buildings and other structures without actuarial support.* STATE FARM is a homeowners and farm/ranch insurer who, under the moniker "Utilities Rating Plan" ("URP"), has systematically charged unfair and discriminatory premiums to Minnesotans living in older homes, farms and ranches to subsidize deep premium discounts for consumers living in new homes, farms and ranches. STATE FARM's URP was a transparent effort to redline and discriminate. STATE FARM's misconduct was and is in violation of state law.

(Emphasis added.)

In 2004, State Farm submitted a rate filing to the DOC in which it sought approval of the same URP filed and approved by the DOC in 1997 and 1998, which is the same URP at issue in this litigation. As it did in 1997, State Farm used age-of-home data as a surrogate for the age of the electrical system. It also provided its actuarial support for the rate

differential based on all noncatastrophic losses. In its review, the DOC considered the actuarial data filed in support of the URP in light of the criticisms raised by Fleischhacker in 2002. There were differences of opinion among DOC staff members.

On April 9, 2004, the DOC approved State Farm's filing. In its approval, the DOC accepted the use of the age of the dwelling as a surrogate for the age of the utilities as well as the use of all noncatastrophic losses as actuarial support for the rate differential. According to one staff member of the department, the approval of State Farm's URP in 2004 reflected a return to the position of Minn.Stat. § 72A.20, subd. 13, that the DOC had followed until 2001.

Both parties moved the district court for summary judgment. On September 3, 2004, the district court denied the class's motion for partial summary judgment. The class sought summary judgment on the ground that as a matter of law State Farm's 1997–1998 URP violates Minn.Stat. § 72A.20, subd. 13, because (1) the URP differential is based solely on the age of dwelling; and (2) the statute requires URP rate differentials to be calculated based on losses caused by the age of a home's electrical system, not all noncatastrophic losses. The district court held that there is a genuine issue of material fact with regard to the sole use of age of dwelling. But in response to the class's motion, the district court agreed with State Farm that because the class's claims are predicated on an alleged violation of Minn.Stat. § 72A.20, subd. 13, summary judgment in favor of State Farm is appropriate because there is no private cause of action for a violation of Minn.Stat. § 72A.20, subd. 13, pursuant to *Morris v. Am. Family Mut. Ins. Co.*, 386 N.W.2d 233 (Minn.1986). On this same date, the district court also granted State Farm's motion for summary judgment under the "filed rate doctrine." This appeal followed.

## ISSUES

I. Does a private right of action exist under the Unfair Claims Practices Act, Minn.Stat. § 72A.20, subd. 13 (2004)?

II. Does the filed rate doctrine bar the class's claims?

## ANALYSIS

On appeal from summary judgment, this court determines whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990).

### I.

Minnesota law requires every homeowner insurer doing business in Minnesota to file its rates and rate revisions with the DOC, and no rate is effective until it has been filed. Minn.Stat. § 70A.06, subd. 1 (2004). The DOC has the power to examine any insurer "[a]t any time and for any reason related to the enforcement of the insurance laws." Minn.Stat. § 60A.031, subd. 1 (2004). The DOC may initiate enforcement proceedings to remedy a violation of the applicable statutes. Minn. Stat. §§ 45.027, 60A.052, subd. 1 (2004). If, after a contested proceeding, the DOC determines that a rate violates Minnesota law, it shall order that the rate be discontinued and "shall order the excess premium plus interest ... to be refunded to the policyholder" from the date the proceeding was commenced. Minn.Stat. § 70A.11, subd. 1 (2004). Further, if the DOC determines that an insurer has charged illegal or improper rates, engaged in any fraudulent or misleading conduct during the filing process, or engaged in any other unfair

trade practice, the commissioner may seek administrative remedies, including the revocation of an insurer's license and penalties. Minn.Stat. §§ 45.027, 60A.031, 60A.052 (2004).

Under the Unfair Claims Practices Act (UCPA), no person shall engage in this state in any trade practice which is defined in sections 72A.17 to 72A.32 as or determined pursuant to sections 72A.17 to 72A.32 to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance. Minn. Stat. § 72A.19, subd. 1 (2004). Subdivision 13 of section 72A.20, entitled "Refusal to renew," prohibits the following trade practice:

> Refusing to renew, declining to offer or write, or charging differential rates for an equivalent amount of homeowner's insurance coverage, as defined by section 65A.27, for property located in a town or statutory or home rule charter city, in which the insurer offers to sell or writes homeowner's insurance, solely because:
>
> . . . .
>
> (b) of the age of the primary structure sought to be insured.

Minn.Stat. § 72A.20, subd. 13(b) (2004). Subdivision 13 also contains a "safe harbor provision" stating:

> This subdivision shall not prohibit the insurer from applying underwriting or rating standards which the insurer applies generally in all other locations in the state and which are not specifically prohibited by clauses (a) to (d). . . . Clause (b) shall not prohibit the use of rating standards based upon the age of the insured structure's plumbing, electrical, heating or cooling system or other part of the structure, the age of which affects the risk of loss.

■ The class argues that (1) it did not assert a private cause of action under Minn.Stat. § 72A.20, subd. 13, but instead requested that the district court rescind the surcharge terms of its respective contracts because these terms violated this statute; (2) the common law recognizes this distinction and affords the right to collect for discriminatory rate charges that violate a regulatory scheme; and (3) the legislature expressly intended to allow suits relating to subdivision 13 through the exception-to-immunity provision in Minn. Stat. § 65A.29, subd. 6 (2004).

State Farm argues that the class's claims fail as a matter of law because the Minnesota Supreme Court in *Morris v. Am. Family Mut. Ins. Co.,* 386 N.W.2d 233 (Minn.1986), held that there is no private cause of action for claims premised on an alleged violation of Minn.Stat. § 72A.20, subd. 13.

The court in *Morris* held that a private party does not have a cause of action against an insurer for a violation of the UCPA, Minn.Stat. § 72A.20. *Morris,* 386 N.W.2d at 238. In *Morris,* the first-party insured plaintiff sued her insurer for basic economic loss no-fault benefits arising out of an auto accident. *Id.* at 233, 237 n. 7. The plaintiff sought to amend her complaint to add a count alleging that the insurer violated the UCPA. *Id.* at 233. The supreme court reasoned in *Morris* that the "comprehensive scheme of administrative enforcement" under the UCPA is "more appropriate to investigating and regulating an insurer's general business practices." *Id.* at 237; *see also LaBarre v. Credit Acceptance Corp.,* 175 F.3d 640, 643 (8th Cir.1999) ("Minnesota law permits only administrative recourse for violations of § 72A.20 and . . . does not provide a private cause of action for violations of this provision.").

The class's claims were predicated on an alleged violation of Minn.Stat. § 72A.20, subd. 13. The class claimed that State Farm's alleged breaches of contract violated this statute. Thus, the class sought to bring a private cause of action under the UCPA, which is barred by *Morris.*

Moreover, this court has rejected a plaintiff's attempt to use an alleged violation of the UCPA as an element of the plaintiff's common law claim for tortious interference with prospective relations. *See Glass Serv. Co. v. State Farm Mut. Auto. Ins. Co.,* 530 N.W.2d 867 (Minn.App. 1995), *review denied* (Minn. May 2, 1995). Relying on *Morris,* this court in *Glass Serv.* reiterated that the UCPA does not create any "private cause of action," regardless of how the claims are styled. *Id.* at 872; *cf. Olson v. Moorhead Country Club,* 568 N.W.2d 871, 873 (Minn.App. 1997) (relying on *Morris* and *Glass Serv.* to hold that an employee did not have a private cause of action for conversion where his only alleged right arose under a statute that did not provide for a private cause of action), *review denied* (Minn. Oct. 31, 1997); *see also Elder v. Allstate Ins. Co.,* 341 F.Supp.2d 1095, 1100–02 (D.Minn. 2004) (citing *Morris* and the absence of a private cause of action under the UCPA to hold that a common law claim for negligence per se cannot be based on an insurer's alleged violation of the UCPA). Thus, the law is settled that a litigant cannot directly sue under Minn.Stat. § 72A.20, subd. 13, or use an alleged violation of this statute to prove elements of a common law claim.

■ Finally, the class argues that this court must recognize that the legislature expressly intended to allow litigation concerning violations of subdivision 13. The class cites Minn.Stat. § 65A.29, subd. 6, entitled "Immunity of Insurer or commissioner," which provides:

There shall be no liability on the part of and no cause of action of any nature shall arise against the commissioner or against any insurer, its authorized representative, its agents, its employees or any firm, person or corporation furnishing to the insured information as to reasons for declination, nonrenewal, or cancellation, for any statement made by them in any written notice of declination, nonrenewal or cancellation, for the providing of information relating thereto, or for statements made or evidence submitted at any hearings or investigations conducted in connection therewith. *This subdivision shall not apply to any action or proceeding arising under section 72A.20.*

(Emphasis added.) According to the class, "by declaring an exception, [section 65A.29] permits litigation concerning violations of § 72A.20, subd. 13."

We reject the class's argument that this statute authorizes it to bring a suit against State Farm. While State Farm is not "immune" from liability under Minn.Stat. § 72A.20, subd. 13, because the DOC may bring an action against State Farm, the class may not bring a private cause of action against State Farm.

## II.

Next, the class argues that the district court erred in granting summary judgment because the "filed rate" doctrine does not apply to bar its claims.

In *Keogh v. Chicago & Nw. Ry. Co.,* 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922), Justice Brandeis set forth what has come to be known as "the filed rate doctrine." In *Keogh,* the plaintiff alleged that the defendant carrier conspired to fix rates for transporting freight, and that this conspiracy violated the Sherman Act. *Id.* at 160, 43 S.Ct. at 48. The plaintiff alleged that

because he was forced to pay higher rates than he would have absent the conspiracy, he suffered damages to the extent of that difference in rates. *Id.* The Supreme Court dismissed the plaintiff's claim, holding that where the defendant charged a rate that had been filed with the Interstate Commerce Commission, "the rates were reasonable and non-discriminatory." *Id.* at 161, 43 S.Ct. at 49.

■ Thus, the filed rate doctrine forbids "a regulated entity [from charging] rates for its services other than those properly filed with the appropriate federal regulatory authority." *Ark. La. Gas Co. v. Hall,* 453 U.S. 571, 577, 101 S.Ct. 2925, 2930, 69 L.Ed.2d 856 (1981). The doctrine holds that any filed rate—a rate that has been approved by the governing regulatory agency—"is per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Wegoland Ltd. v. NYNEX Corp.,* 27 F.3d 17, 18 (2d Cir. 1994). The filed rate doctrine applies to regulation by state agencies as well as federal. *H.J. Inc. v. Northwestern Bell Tel. Co.,* 954 F.2d 485, 494 (8th Cir.1992) (applying filed rate doctrine to Minnesota phone rates). This court has recognized the filed rate doctrine. *See, e.g., G & T Trucking Co. v. GFI America, Inc.,* 535 N.W.2d 658, 660–61 (Minn.App.1995) (noting that the filed rate doctrine requires a regulated entity to prove its filed rate).

The district court held that the filed rate doctrine bars the class's claims and relied on the *Wegoland* decision. In *Wegoland,* the plaintiff class alleged that two telephone companies gave regulatory agencies and consumers misleading financial information to support the inflated rates they requested. *Wegoland, Ltd. v. NYNEX Corp.,* 806 F.Supp. 1112, 1113 (S.D.N.Y. 1992), *aff'd,* 27 F.3d 17 (2d Cir.1994). The plaintiffs alleged that companies purchased products at inflated prices, then used those prices to justify inflated rates which resulted in high profits. *Id.* The Second Circuit affirmed the district court's holding that the filed rate doctrine barred the plaintiff's claims and that no fraud exception to the doctrine exists. *Wegoland,* 27 F.3d at 21–22. The district court found that the facts in *Wegoland* are "exceedingly similar" to this case, in which the class alleges that State Farm gave the DOC misleading actuarial information in support of its surcharge. We affirm the district court's holding that the filed rate doctrine bars the class's claims.

■ The class argues that (1) the facts of this case do not warrant adoption of the filed rate doctrine; (2) the filed rate doctrine does not apply to insurance; (3) the filed rate doctrine does not apply to discriminatory insurance practices; (4) the filed rate doctrine does not apply because it conflicts with Minnesota common law; and (5) the filed rate doctrine cannot apply to the class's rental dwelling policy claims. State Farm argues that the filed rate doctrine applies in this case and that the exceptions the class cites are inapplicable. We address each of the claims.

■■ The class first argues that the facts of this case do not warrant adoption of the filed rate doctrine because "[w]hile initially created to protect consumers, the filed rate doctrine has been used in recent times to victimize consumers." But here, applying the filed rate doctrine comports with the policies underlying the doctrine. Application of the filed rate doctrine (1) prevents the judiciary from "reconstitute[ing] the whole rate structure" of an industry; (2) avoids retroactive relief that would lead to discrimination in rates such that a victorious plaintiff would end up paying less than similarly situated nonsuing customers; and (3) avoids "undermin[ing] the congressional scheme of uniform rate regulation." *Wegoland,* 27 F.3d

at 19 (quoting *Keogh,* 260 U.S. at 163–64, 43 S.Ct. at 49–50; *Ark. La. Gas,* 453 U.S. at 579, 101 S.Ct. at 2931). Additionally, the filed rate doctrine preserves the regulatory agency's authority to determine the reasonableness of an entity's filed rates. *Id.* at 21. We agree with the *Wegoland* court that "[a]s compared with the expertise of regulating agencies, courts do not approach the same level of institutional competence to ascertain reasonable rates. . . . Courts are simply ill-suited to systematically second guess the regulators' decisions and overlay their own resolution." *Id.*

Here, State Farm complied with Minnesota law by filing its rates with the DOC and thus should not now be subject to retroactive rate revisions when it satisfied the regulatory agency—the DOC. Furthermore, it was only after the DOC completed its review and required changes to comply with the statute at issue that the DOC accepted the URP for use in Minnesota. Allowing the class to challenge retroactively the reasonableness of the DOC-approved URP would undermine Minnesota's statutory process.

Next, the class argues that the competitive and deregulated nature of the private insurance market and the absence of exclusive jurisdiction of the DOC do not support applying the filed rate doctrine in Minnesota. But the class lacks authority for its position that the filed rate doctrine is premised upon the exclusive jurisdiction of regulators. Our decision is consistent with other courts that have applied the filed rate doctrine to the insurance industry. *See Kirksey v. Am. Bankers Ins. Co.,* 114 F.Supp.2d 526, 529–30 (S.D.Miss.2000); *Allen v. State Farm Fire & Cas. Co.,* 59 F.Supp.2d 1217, 1228–29 (S.D.Ala.1999); *Korte v. Allstate Ins. Co.,* 48 F.Supp.2d 647, 650–52 (E.D.Tex.1999); *Morales v. Attorneys' Title Ins. Fund, Inc.,* 983 F.Supp. 1418, 1426–29 (S.D.Fla.1997); *Uniforce Temp. Pers., Inc. v. Nat'l Council on Comp. Ins., Inc.,* 892 F.Supp. 1503, 1511–12, 1512 n. 11 (S.D.Fla.1995), *aff'd,* 87 F.3d 1296 (11th Cir.1996); *Richardson v. Standard Guar. Ins. Co.,* 371 N.J.Super. 449, 853 A.2d 955, 962–64 (N.J.Super.Ct.App.Div.2004); *Horwitz v. Bankers Life & Cas. Co.,* 319 Ill.App.3d 390, 253 Ill.Dec. 468, 745 N.E.2d 591, 604–05 (2001); *Am. Bankers' Ins. Co. v. Wells,* 819 So.2d 1196, 1204 (Miss.2001); *N.C. Steel, Inc. v. Nat'l Council on Comp. Ins.,* 347 N.C. 627, 496 S.E.2d 369, 372 (1998); *Byan v. Prudential Ins. Co.,* 242 A.D.2d 456, 662 N.Y.S.2d 44, 45 (N.Y.App.Div.1997); *Prentice v. Title Ins. Co.,* 176 Wis.2d 714, 500 N.W.2d 658, 661–63 (1993).

Next, the class argues that the filed rate doctrine does not apply to discriminatory insurance practices. The class argues that State Farm "cloaked its discriminatory intent behind a fictitiously named 'utilities' classification, when the classification was really an age of dwelling classification." The class cites *Dehoyos v. Allstate Corp.,* 345 F.3d 290 (5th Cir.2003), for the proposition that courts have allowed class action lawsuits seeking to restore premiums charged under discriminatory classifications to proceed. But the court in *Dehoyos* did not address the filed rate doctrine. Instead, the court addressed whether the McCarran–Ferguson Act preempted federal discrimination law. *Id.* at 293. Thus, we do not find persuasive the class's argument that there is a "discriminatory practice" exception to the filed rate doctrine.

Next, the class argues that the filed rate doctrine does not apply because it conflicts with Minnesota common law. The class cites *Bell Lumber Co. v. Great N. Ry. Co.,* 135 Minn. 271, 160 N.W. 688 (1916), for the proposition that Minnesota law has long permitted a ratepayer to recover for illegal rate charges regardless of the existence of

a regulatory scheme, in contradiction to the filed rate doctrine. Similarly, the class cites *Sullivan v. Minneapolis & R.R. Ry. Co.,* 121 Minn. 488, 142 N.W. 3 (1913), arguing that a Minnesota rate regulation scheme did not impair the right of a ratepayer to recover under the common law for illegal, discriminatory rates.

The class's reliance on these two Minnesota cases is not persuasive because they predate the U.S. Supreme Court's decision in *Keogh* and because they do not involve challenges to the reasonableness or legality of rates properly filed with and approved by a regulatory agency. Furthermore, the Minnesota Supreme Court's decision in *Morris* confirms the policies embodied in the filed rate doctrine.

Finally, the class argues that if this court adopts the filed rate doctrine, remand is required for holders of rental dwelling policies (RDP). The class argues that the filed rate doctrine cannot apply to the class's RDP claims because an RDP is a policy form covering one- or two-family dwellings owned, but not occupied, by the policyholder. We disagree. The district court properly dismissed the class's RDP claims because Minn.Stat. § 72A.20, subd. 13, applies to "homeowners' insurance," and not rental dwellings. Thus, Minn.Stat. § 72A.20, subd. 13, does not cover RDP claims.

## DECISION

Because the class has no private cause of action under the Unfair Claims Practices Act, Minn.Stat. 72A.20, subd. 13 (2004), and because the filed rate doctrine bars the class's claims, the district court did not err by granting summary judgment in favor of State Farm.

**Affirmed.**