GRAPHIC COMMUNICATIONS LO-
CAL 1B HEALTH & WELFARE
FUND "A", et al., Appellants,

v.

CVS CAREMARK CORPORATION,
et al., Respondents,

Coborn's Incorporated, Respondent,

Kmart Holding Corporation,
et al., Respondents,

Snyder's Drug Stores (2009), Inc.,
et al., Respondents,

Target Corporation, Respondent,

Walgreen Co., Respondent,

Wal–Mart Stores, Inc., Respondent.

No. A12–1555.

Court of Appeals of Minnesota.

May 6, 2013.

Review Granted July 31, 2013.

David L. Hashmall, Felhaber, Larson, Fenlon & Vogt, P.A., Minneapolis, MN; and Perrin Rynders (pro hac vice), Varnum LLP, Grand Rapids, MI, for appellants.

Wendy J. Wildung, Craig S. Coleman, Faegre Baker Daniels LLP, Minneapolis, MN, for respondent Target Corporation.

Todd A. Noteboom, Elizabeth Wiet Reutter, Leonard, Street and Deinard, Minneapolis, MN, for respondent Walgreen Co.

Lewis A. Remele, Jr., Christopher R. Morris, Bassford Remele, P.A., Minneapolis, MN; and Robert H. Griffith (of counsel) (pro hac vice), Foley & Lardner LLP, Chicago, IL, for respondents CVS Caremark Corporation, et al.

James K. Langdon, Dorsey & Whitney, Minneapolis, MN, for respondents Snyder's Drug Stores (2009), Inc., et al.

Kevin D. Hofman, Ronald B. Peterson, Halleland Habicht P.A., Minneapolis, MN, for respondent Coborn's Incorporated.

Tracy J. Van Steenburgh, Nilan Johnson Lewis, P.A., Minneapolis, MN, for respondents Kmart Holding Corporation, et al.

David R. Marshall, Joseph J. Cassioppi, Fredrikson & Byron, P.A., Minneapolis, MN, for respondent Wal–Mart Stores, Inc.

Considered and decided by WORKE, Presiding Judge; KALITOWSKI, Judge; and SCHELLHAS, Judge.

## OPINION

KALITOWSKI, Judge.

In this action, appellants—a group of union-sponsored health-benefit plans—challenge the district court's Minn. R. Civ. P. 12 dismissal of their claims against respondent pharmacies, arguing that the district court erred by concluding that (1) Minn.Stat. § 151.21, subd. 4 (2012), does not create a private right of action, and (2) appellants failed to adequately plead a claim under the Minnesota Prevention of Consumer Fraud Act (CFA), Minn.Stat. § 325F.69, subd. 1 (2012), and the private-attorney-general statute, Minn.Stat. § 8.31, subd. 3a (2012).[1]

## FACTS

When patents expire on brand-name prescription drugs, prescription drug manufacturers may obtain government approval to manufacture and sell generic versions of the patent-expired brand-name drugs. Pharmacies acquire generic prescription drugs at a lower cost and sell them at substantial discounts as compared to their brand-name counterparts. With certain exceptions, Minnesota law requires that Minnesota-licensed pharmacists substitute a generic prescription drug, when available, when a consumer is prescribed the brand-name drug. Minn.Stat. § 151.21, subd. 3 (2012). Further, the law requires that pharmacies pass on to the purchaser any cost savings realized by the lower acquisition costs of generic prescription drugs as compared to their brand-name equivalents. *Id.*, subd. 4. Here, appellants allege that respondent pharmacies have violated the statute by failing to pass on their costs savings to purchasers since 2003.

In July 2009, appellants sued respondents in state court alleging that respondents violated Minn.Stat. § 151.21, subd. 4. Respondents removed the case to federal district court and, in November 2009, the federal district court granted respondents' motion to dismiss the complaint without prejudice. *Graphic Comm'ns Local 1B Health & Welfare Fund "A" v. CVS Caremark Corp.*, 725 F.Supp.2d 849, 851 (D.Minn.2010). Appellants then filed an amended complaint and moved to remand the case to state court based on a lack of subject-matter jurisdiction under the Class Action Fairness Act (CAFA); respondents again moved to dismiss. *Id.* at 851–52. The federal district court granted appellants' motion to remand and denied respondents' motion to dismiss. *Id.* at 855. In denying respondents' motion to dismiss, the federal district court stated the following:

> No Minnesota court has construed [Minn.Stat. § 151.21, subd. 4]. Absent such guidance, and for purposes here, the Court finds the statute ambiguous. Each side offers a reasonable interpretation, and neither is foreclosed by the text of the statute or decisions of the Minnesota Supreme Court. Accordingly, [appellants'] interpretation can support a plausible claim for relief.
>
> . . . .
>
> . . . If [appellants'] interpretation of Minn.Stat. § 151.21, subd. 4 is correct—a point on which this Court expresses no opinion—these facts, taken as true, permit a reasonable inference that the pharmacies retained a greater profit on

---

1. The relevant portions of these statutes in effect at the time of the district court's decision have not changed. For ease of reference, we refer to the current versions of these statutes throughout this opinion.

the generic drugs than the statute allows.

*Id.* at 852.

Respondents appealed to the Eighth Circuit Court of Appeals, challenging the federal district court's order to remand under CAFA. *Graphic Comm'ns Local 1B Health & Welfare Fund "A" v. CVS Caremark Corp.,* 636 F.3d 971, 973 (8th Cir. 2011). The Eighth Circuit Court of Appeals reversed and remanded the case to federal district court. *Id.* at 976. In November 2011, the federal district court remanded the case to state court. *Graphic Comm'ns Local 1B Health & Welfare Fund v. CVS Caremark Corp.,* No. 09–2203, 2011 WL 5827182, at *1 (D.Minn. Nov. 18, 2011). On remand, appellants filed an amended complaint alleging that respondents violated (1) Minn.Stat. § 151.21, subd. 4, and (2) the CFA, Minn. Stat. § 325F.69, subd. 1. Respondents moved to dismiss the amended complaint under Minn. R. Civ. P. 8.01, 9.02, and 12.02.

In July 2012, the district court dismissed appellants' amended complaint with prejudice. The district court concluded that appellants do not have a right to sue for alleged violations of Minn.Stat. § 151.21, subd. 4, because no private right of action exists under subdivision 4. The district court also concluded that appellants failed to plead an actionable claim under the CFA because appellants (1) failed to plead that respondents had a duty to disclose their acquisition costs and that omitting the acquisition costs was material; (2) failed to plead a causal nexus; and (3) failed to show any public benefit.

## ISSUES

1. Did the district court err by concluding that Minn.Stat. § 151.21, subd. 4 (2012), does not create a private right of action?

2. Did the district court err by concluding that appellants failed to adequately plead a claim under Minn.Stat. § 325F.69 (2012) of the Minnesota Prevention of Consumer Fraud Act, Minn.Stat. § 325F.68–.70 (2012), and the private-attorney-general statute, Minn.Stat. § 8.31a (2012)?

## ANALYSIS

### I.

■ We first address appellants' assertion that the district court erred by concluding that Minn.Stat. § 151.21, subd. 4, does not create a private right of action. Statutory interpretation is a question of law, which we review de novo. *Swenson v. Nickaboine,* 793 N.W.2d 738, 741 (Minn. 2011). "Our goal ... is to ascertain and effectuate the intention of the legislature. If the meaning of a statute is unambiguous, we interpret the statute's text according to its plain language. If a statute is ambiguous, we apply other canons of construction to discern the legislature's intent." *Brua v. Minn. Joint Underwriting Ass'n,* 778 N.W.2d 294, 300 (Minn.2010) (quotation and citations omitted). "A statute should be interpreted, whenever possible, to give effect to all of its provisions; no word, phrase or sentence should be deemed superfluous, void, or insignificant." *Am. Family Ins. Grp. v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000) (quotation omitted). "We are to read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Id.*

■ "A statute does not give rise to a civil cause of action unless the language of the statute is explicit or it can be determined by clear implication." *Becker v. Mayo Found.,* 737 N.W.2d 200, 207 (Minn. 2007); *Flour Exch. Bldg. Corp. v. State,* 524 N.W.2d 496, 498 (Minn.App.1994), *review denied* (Minn. Feb. 14, 1995). "Prin-

ciples of judicial restraint preclude us from creating a new statutory cause of action that does not exist at common law where the legislature has not either by the statute's express terms or by implication provided for civil tort liability." *Becker,* 737 N.W.2d at 207 (quotation omitted); *see also Stubbs v. N. Mem'l Med. Ctr.,* 448 N.W.2d 78, 81 (Minn.App.1989) ("It is not, however, the function of this court to establish new causes of action."), *review denied* (Minn. Jan. 12, 1990). "Without statutory intent, 'a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.'" *Alliance for Metro. Stability v. Metro. Council,* 671 N.W.2d 905, 916 (Minn.App.2003) (quoting *Alexander v. Sandoval,* 532 U.S. 275, 286–87, 121 S.Ct. 1511, 1520, 149 L.Ed.2d 517 (2001)). In determining whether a cause of action may be implied, we may consider "(1) whether the plaintiff belongs to the class for whose benefit the statute was enacted; (2) whether the legislature indicated an intent to create or deny a remedy; and (3) whether implying a remedy would be consistent with the underlying purposes of the legislative enactment." *Flour Exch.,* 524 N.W.2d at 499 (citing *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975)).

Minnesota law provides that under certain circumstances, pharmacists must dispense generic prescription drugs in place of their brand-name equivalents:

When a pharmacist receives a paper or hard copy prescription on which the prescriber has not personally written in handwriting "dispense as written" or "D.A.W.," . . . and there is available in the pharmacist's stock a less expensive generically equivalent drug that, in the pharmacist's professional judgment, is safely interchangeable with the prescribed drug, then the pharmacist shall, after disclosing the substitution to the purchaser, dispense the generic drug, unless the purchaser objects.

Minn.Stat. § 151.21, subd. 3. And when substituting the generic prescription drug for the brand-name equivalent, "[a]ny difference between acquisition cost to the pharmacist of the drug dispensed and the brand name drug prescribed shall be passed on to the purchaser." *Id.,* subd. 4.

Minn.Stat. § 151.21, subd. 4, does not explicitly create a private right of action. But appellants contend that the district court erred in dismissing their claim, arguing that the legislature implied a private right of action. We disagree.

Based on the supreme court's decision in *Becker,* we conclude that the legislature did not intend to create a private right of action. The statute does not mention a private right of action, which suggests that the legislature deliberately omitted to provide for one. *See Becker,* 737 N.W.2d at 209 ("The obvious conclusion must usually be that when the legislators said nothing about it, they either did not have the civil suit in mind at all, or deliberately omitted to provide for it.") (quotation omitted). Moreover, other sections of chapter 151 provide remedies for a violation of subdivision 4, including administrative actions against professional licenses, civil fines, and criminal penalties. Minn.Stat. §§ 151.06, subds. 1(7), 5, .29, .30 (2012). The existence of these remedies, and the absence of a private civil remedy, indicates that the legislature did not intend to create a private right of action. *See Becker,* 737 N.W.2d at 208 ("The plain language of the statute indicates that the legislature chose to impose criminal, but not civil, penalties on mandatory reporters who fail to report."); *see also Mut. Serv. Cas. Ins. Co. v. Midway Massage, Inc.,* 695 N.W.2d 138, 143 (Minn.App.2005) (holding that, because

a statute provided a remedy via board action through the state attorney general, the legislature did not intend to create a private right of action), *review denied* (Minn. June 14, 2005).

Appellants argue that the remedies the legislature provided are inadequate because they do not secure appellants' right to receive specific monetary savings when a pharmacist dispenses a generic prescription drug. Although this may be correct, we may not substitute our judgment for that of the legislature as to what remedies are adequate. *Becker,* 737 N.W.2d at 207 (" '[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.' " (quoting *Transamerica Mortg. Advisors, Inc. v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979))); *see also Beck v. Groe,* 245 Minn. 28, 44, 70 N.W.2d 886, 897 (1955) ("No right of action exists save that expressly given by statute, and the remedy prescribed cannot be enlarged except by further legislative enactment.").

We conclude that Minn.Stat. § 151.21, subd. 4, does not imply a private right of action. As the Minnesota Supreme Court has stated, "the legislature expressly creates civil liability when it intends to do so." *Becker,* 737 N.W.2d at 208. Therefore, the district court did not err by dismissing appellants' claim under the statute.

## II.

 We next address whether the district court erred by concluding that appellants failed to adequately plead a claim under the CFA and the private-attorney-general statute. "We conduct a de novo review of a Rule 12 dismissal." *Krueger v. Zeman Constr. Co.,* 781 N.W.2d 858, 861 (Minn.2010). "When reviewing a case dismissed pursuant to Minn. R. Civ. P. 12.02(e) for failure to state a claim on which relief can be granted, the question before this court is whether the complaint sets forth a legally sufficient claim for relief." *Hebert v. City of Fifty Lakes,* 744 N.W.2d 226, 229 (Minn.2008). We "must consider only the facts alleged in the complaint, accepting those facts as true and must construe all reasonable inferences in favor of the nonmoving party." *Bodah v. Lakeville Motor Express, Inc.,* 663 N.W.2d 550, 553 (Minn.2003). "On review of a Rule 12 dismissal, we will not uphold the dismissal 'if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded.' " *Wiegand v. Walser Auto. Grps., Inc.,* 683 N.W.2d 807, 811 (Minn. 2004) (quoting *Martens v. Minn. Mining & Mfg. Co.,* 616 N.W.2d 732, 739–40 (Minn. 2000)).

### The Prevention of Consumer Fraud Act and Private–Attorney–General Statute

 The CFA provides:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70.

Minn.Stat. § 325F.69, subd. 1; *Grp. Health Plan, Inc. v. Philip Morris Inc.,* 621 N.W.2d 2, 12 (Minn.2001) (stating that the CFA "defines the conduct proscribed essentially as any misrepresentation made with the intent that others rely on it in connection with the sale of any merchandise"). And under the private-attorney-general statute, private plaintiffs may seek damages if they are injured by a violation of the CFA:

In addition to the remedies otherwise provided by law, any person injured by a violation of [the CFA] may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court.

Minn.Stat. § 8.31, subd. 3a. In order to obtain monetary damages under the private-attorney-general statute, a party must additionally show that the action will benefit the public. *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn.2000).

■■ Consumer-protection statutes, including the CFA, "are to be liberally construed in favor of protecting consumers." *State by Humphrey v. Alpine Air Prods., Inc.*, 490 N.W.2d 888, 892 (Minn.App.1992), *aff'd* 500 N.W.2d 788 (Minn.1993); *see also Nystrom*, 615 N.W.2d at 308 ("We recently observed that the [MCFA] 'reflect[s] a clear legislative policy encouraging aggressive prosecution of statutory violations' and thus should be 'generally very broadly construed to enhance consumer protection.'" (quoting *State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 495–96 (Minn.1996))). "Consumer protection laws were not intended to codify the common law; rather they were intended to broaden the cause of action to counteract the disproportionate bargaining power present in consumer transactions." *Alpine Air Prods., Inc.*, 490 N.W.2d at 892.

### Pleading Fraud Claims

■■ When pleading a fraud claim, the circumstances constituting fraud must be stated with particularity. Minn. R. Civ. P. 9.02; *Baker v. Best Buy Stores, LP*, 812 N.W.2d 177, 183 (Minn.App.2012), *review denied* (Minn. Apr. 25, 2012). "A fraud claim is pleaded with particularity when the ultimate facts are alleged." *Baker*, 812 N.W.2d at 182 (quotation omitted).

In *Grp. Health*, the Minnesota Supreme Court examined the pleading requirements for a private consumer-fraud class action. 621 N.W.2d at 4. There, in the context of a Fed.R.Civ.P. 12 motion to dismiss, the supreme court determined that plaintiffs "need only plead that the defendant engaged in conduct prohibited by the statutes and that the plaintiff[s were] damaged thereby." *Id.* at 5, 12. And "[a]llegations of reliance are therefore not necessary to state a claim under section 8.31, subdivision 3a, for damages resulting from a violation." *Id.* at 12. The supreme court "based this conclusion on the fact that the legislature had eliminated the requirement of pleading and proving 'traditional common law reliance' as an element of a cause of action based on misrepresentations regarding the sale of merchandise." *Wiegand*, 683 N.W.2d at 811 (quoting *Grp. Health*, 621 N.W.2d at 13).

But the supreme court also determined that in order to ultimately prove allegations of consumer fraud, Minn.Stat. § 8.31, subd. 3a, requires that a plaintiff prove a "causal nexus" between the plaintiff's injuries and the defendant's wrongful conduct. *Grp. Health*, 621 N.W.2d at 14–15. The supreme court stated that "in a case such as *Group Health*, in which the plaintiffs' damages were 'alleged to be caused by a lengthy course of prohibited conduct that affected a large number of consumers,' direct evidence of reliance by individual consumers [is] not required." *Wiegand*, 683 N.W.2d at 811 (quoting *Grp. Health*, 621 N.W.2d at 14). "Rather, the causal nexus and its reliance component may be established by other direct or circumstantial evidence that the district court determines is relevant and probative as to the relationship between the claimed damages and the alleged prohibited conduct." *Grp. Health*, 621 N.W.2d at 14.

Here, appellants argue that they pleaded a legally sufficient claim under the CFA

and the private-attorney-general statute and that the district court erred by dismissing their claim. We agree.

### Misrepresentations/Omissions and the Duty to Disclose

■■ A CFA claim may be based on a material omission that renders the sales transaction deceptive or misleading. *See Khoday v. Symantec Corp.*, 858 F.Supp.2d 1004, 1018 (D.Minn.2012) (stating that the CFA is "broader than common law fraud and support[s] omissions as violations when they are material and naturally affect consumers' conduct"). In *Minn. ex rel. Hatch v. Fleet Mortg. Corp.*, the defendants argued that an omission can only give rise to a claim of misrepresentation where there is a duty to disclose the allegedly omitted information. 158 F.Supp.2d 962, 966–67 (D.Minn.2001). The court rejected this argument, stating the following:

> The cases relied upon for this proposition concern common law fraud and not state consumer protection statutes. The [CFA is] broader than common law fraud and support[s] omissions as violations. While there is no Minnesota case authority directly on point, other courts hold that while a duty to disclose may be required by common law fraud/misrepresentation, it is not required for liability under more broadly drafted consumer protection statutes. *See V.S.H. Realty v. Texaco, Inc.*, 757 F.2d 411, 417 (1st Cir.1985); *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 221 Ill.Dec. 389, 675 N.E.2d 584, 595 (1996). In such situations, the omission must be material, *see* 757 F.2d at 417, 675 N.E.2d at 595, meaning it must naturally affect the person's decision or conduct, *Yost v. Millhouse*, 373 N.W.2d 826, 830 (Minn.App. 1985).

*Id.* at 967 (citations omitted).

Here, the district court determined that appellants' complaint failed to allege an actionable omission because appellants did not plead that respondents had a duty to disclose their costs for acquiring generic drugs. We disagree. Because this is a consumer-fraud action, we conclude that, at this stage of the litigation, appellants' complaint need only allege that respondents' failure to disclose acquisition costs and subsequent overcharges were material omissions.

In reaching its decision, the district court relied on two of our unpublished cases and *Doe 43C v. Diocese of New Ulm*, 787 N.W.2d 680, 690 (Minn.App.2010), to conclude that an omission or representation through silence is only actionable if there is a duty to disclose based on a relationship of trust or confidence or an unequal access to information. But our unpublished cases are not precedential. Minn.Stat. § 480A.08, subd. 3 (2012). And *Doe 43C* is inapposite because it involved a common-law intentional-misrepresentation claim; it did not address a CFA claim. *See* 787 N.W.2d at 686 (setting forth the common-law elements of intentional-misrepresentation claim); *cf. Alpine Air Prods., Inc.*, 490 N.W.2d at 892 (stating that consumer-protection laws, such as the CFA, were intended to broaden the common-law cause of action).

Moreover, respondents do not cite, and we have not found, controlling Minnesota precedent supporting their argument that appellants' claim fails because it did not allege a duty to disclose. Because the CFA was not intended to codify the common law, and because we are to liberally construe the CFA in favor of protecting consumers, we conclude that the district court erred by dismissing appellants' claim on this basis.

We also reject the district court's policy rationale regarding a duty to disclose.

The district court concluded that finding an actionable claim based on undisclosed acquisition costs "would open the floodgates to [CFA] claims based on a merchant's failure to disclose acquisition costs in connection with any consumer transaction." In reaching this conclusion, the district court cited *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 749 (7th Cir.2001), which states, "since when is failure to disclose the precise difference between wholesale and retail prices for any commodity 'fraud'? ... Neiman Marcus does not tell customers what it paid for the clothes they buy, nor need an auto dealer reveal rebates and incentives it receives to sell cars." But *In re Mex. Money Transfer Litig.* did not involve an underlying statute that requires merchants to pass on its cost savings to consumers. 267 F.3d at 747–48. Nor is Neiman Marcus required by statute to pass on to customers the savings it realizes when purchasing clothes from cheaper suppliers. We thus conclude that the district court's "floodgates" analysis is unpersuasive.

### Causal Nexus

The district court determined that appellants' CFA claim fails to plead a causal nexus because it does not allege a connection between the alleged omissions and the alleged overcharges. In addition, the district court concluded the claim fails because appellants do not allege anyone would have acted differently, had they known about respondents' acquisition costs. We disagree.

Both respondents and appellants rely on *Kinetic Co. v. Medtronic, Inc.*, 672 F.Supp.2d 933 (D.Minn.2009), in arguing whether appellants sufficiently pleaded a causal nexus. In *Kinetic*, the federal district court, in the context of a federal rule 12 motion to dismiss, determined that the plaintiff adequately stated an CFA claim. 672 F.Supp.2d at 944–45. In analyzing the causal nexus, the federal district court stated the following:

> The alleged causative chain is not complicated. [Plaintiff] alleges [Defendant] sold devices for surgical implantation into patients knowing a significant number of those devices exhibited defects posing a risk to patients' lives. Notwithstanding this knowledge, [Defendant] neither disclosed this information, nor ceased selling the potentially-defective product, thus continuing to expose more patients to the risk of which it was aware. [Defendant's] failure to advise the FDA or the physicians who prescribed the device led doctors to continue to select, and insurers to continue to pay for, potentially defective devices without knowing of the potentially-catastrophic risk. Had [Defendant] timely disclosed the risks it knew its product presented, insurers might have refused to pay for the original device or the costs to implant it.

*Id.* at 943, 945–46.

We conclude that the alleged chain of causation here is similarly uncomplicated and that *Kinetic* is analogous. Appellants allege that respondents kept secret from the public their acquisition costs for generic prescription drugs and that, since 2003, respondents overcharged for generic prescription drugs by not passing on the difference between the acquisition cost of the brand-name drug prescribed and the generic drug dispensed, as required by statute. And because respondents neither disclosed their acquisition costs, nor ceased selling the generic prescription drugs at inflated prices, appellants continued to pay inflated prices for generic prescription drugs without knowing they were being overcharged in violation of Minnesota law. Appellants allege that "[respondents] intended that [appellants] would rely on such fraudulent, misleading, or deceptive prac-

tices in connection with the sale of merchandise: namely, generic prescription drugs."

Appellants' allegations are sufficiently detailed to survive a rule 12 motion to dismiss. Appellants allege specific instances in which they were overcharged; they set forth specific pharmacies, dates, quantities, brand-name acquisition costs, generic acquisition costs, brand-name sales prices, generic sales prices, and overcharge amounts. In sum, the complaint alleges that misrepresentations were made and consumers were damaged thereby. Thus, the complaint is sufficiently detailed to allow respondents to respond to the allegations. *See, e.g., E–Shops Corp. v. U.S. Bank Nat'l Ass'n,* 678 F.3d 659, 663 (8th Cir.2012) (stating that the complaint must plead the details of the fraudulent acts). Appellants' complaint, therefore, meets the requirements set forth in *Grp. Health* and *Wiegand* to establish a legally sufficient claim for relief.

■■■ We also reject respondents' argument that the complaint fails because it does not allege how appellants would have acted differently. As the Minnesota Supreme Court stated in *Grp. Health* and later reaffirmed in *Wiegand,* in the context of a rule 12 motion to dismiss, appellants are not required to show direct evidence of reliance by individual consumers. 683 N.W.2d at 811, 621 N.W.2d at 13. It is enough to allege that respondents violated the CFA and that appellants were damaged—in this case, overcharged—as a result.

Likewise respondents' argument that appellants' complaint fails because it does not allege to whom and when respondents should have disclosed their acquisition costs is without merit. At this stage appellants' complaint is sufficiently detailed to meet the requirements of rule 9.02 by specifically alleging instances in which respondents violated the CFA and damaged appellants.

### Public Benefit

The district court determined that appellants' complaint does not meet the public-benefit requirement under the CFA because it pleads one-on-one transactions and the relief sought is primarily money damages. We disagree.

■■■ In order to obtain monetary damages under the private-attorney-general statute, a party must, in addition to proving a statutory violation, show that the action will benefit the public. *Nystrom,* 615 N.W.2d at 314. In *Nystrom,* a plaintiff brought an action under the CFA and sought attorney fees. *Id.* at 304. Emphasizing that the fraudulent transaction was completed on a one-on-one basis, the Minnesota Supreme Court concluded that the plaintiff did not demonstrate that his claim was in the public interest. *Id.* at 314. The supreme court reasoned that "[a]ppellant was defrauded in a single one-on-one transaction in which the fraudulent misrepresentation, while evincing reprehensible conduct, was made only to appellant. A successful prosecution of [appellant's] fraud claim does not advance state interests and enforcement has no public benefit...." *Id.*

The Minnesota Supreme Court revisited the *Nystrom* holding in *Collins v. Minn. Sch. of Bus., Inc.,* 655 N.W.2d 320, 329–30 (Minn.2003). In *Collins,* plaintiffs brought a claim under the CFA alleging that the Minnesota School of Business advertised career opportunities to prospective students that were not "commonly recognized" in the sports-medicine field. 655 N.W.2d at 322. In concluding that the plaintiffs failed to demonstrate a public benefit, the district court applied *Nystrom* and found that only a small group of persons were injured by the school's fraudu-

lent activities. *Id.* at 330. But the supreme court determined that the district court "misapplied the holding in *Nystrom* " by ignoring that the school made misrepresentations to the public at large. *Id.; see also In re Levaquin Prods. Liab. Litig.,* 752 F.Supp.2d 1071, 1078 (D.Minn. 2010) ("[A]fter *Collins,* it seems reasonable to infer that the Minnesota Supreme Court is as much if not more concerned with the *degree* to which defendants' alleged misrepresentations affect the public—a factor in plaintiffs' favor.").

Here, respondents sold generic prescription drugs to the public and, since 2003, have engaged in over 200,000 prescription-drug transactions with appellants. Appellants allege that respondents routinely overcharged them for purchases of many different generic prescription drugs from 2003 to the present. Consequently, this case is not a single one-on-one transaction like *Nystrom.* Rather, it is analogous to *Collins,* in which the defendant made misrepresentations to the public at large.

Moreover, as in *Collins,* this lawsuit may indirectly lead to changes. Appellants allege that respondents are overcharging for generic prescription drugs, and that the overcharges are continuing. Thus, this action could prompt pharmacies to pass on cost savings to purchasers as required by Minn.Stat. § 151.21, subd. 4. Construing appellants' complaint as true, as we must on review of a rule 12 dismissal, appellants' allegations that respondents have deceptively overcharged purchasers of generic prescription drugs in Minnesota since 2003 involve a public benefit.

In sum, given the early stage of the proceedings and the requirement that we liberally construe the CFA in favor of protecting consumers, we conclude that appellants sufficiently pleaded a CFA claim and that the district court erred by dismissing this claim under rule 12.

## DECISION

Because Minn.Stat. § 151.21, subd. 4, does not imply a private right of action, the district court did not err by dismissing appellants' claim under the statute. But because appellants pleaded a claim under the CFA and the private-attorney-general statute that is sufficient to survive a rule 12 motion to dismiss, the district court erred by dismissing appellants' consumer-fraud claim.

**Affirmed in part, reversed in part, and remanded.**

SCHELLHAS, Judge (concurring in part, dissenting in part).

I concur with the majority's opinion that Minnesota's generic prescription drug substitution statute, Minn.Stat. § 151.21, subd. 4 (2012), does not give rise to a private right of action for the pharmacists' failure to pass on their entire cost savings when dispensing generic prescription drugs in place of brand-name prescription drugs. But I respectfully dissent from the majority's opinion that appellants pleaded a legally sufficient claim under the Minnesota Consumer Fraud Act (MCFA), Minn. Stat. § 325F.69, subd. 1 (2012), and the private attorney-general statute, Minn. Stat. § 8.31, subd. 3a (2012), to survive respondents' rule 12 motion. I do not agree that the district court erred by dismissing that claim.

In a well-reasoned order, the district court concluded that appellants failed to plead a sufficient claim under the MCFA and private attorney-general statute. In analyzing the sufficiency of appellants' claim, the district court noted that "[t]he MCFA defines the conduct proscribed essentially as any misrepresentation made with the intent that others rely on it in connection with the sale of any merchan-

dise," citing *Grp. Health Plan, Inc. v. Philip Morris, Inc.,* 621 N.W.2d 2, 12 (Minn.2001). (Quotations omitted.) Here, appellants base their claim of omission on the fact that respondents did not publicly disclose their acquisition costs, failed to pass on the difference between their cost of acquisition of generic drugs and brand-name drugs, and therefore concealed alleged overcharges from purchasers. As the district court aptly noted, appellants' claim of omission is dependent on the materiality of the information omitted *and* a duty to disclose the information. As the court noted, appellants' amended complaint "is devoid of allegations demonstrating the materiality of the alleged omissions" and appellants did not allege the existence of such a duty to disclose. Stating that, "[e]ven if appellants had alleged a duty to disclose, whether [respondent]s owed [appellant]s such a duty is for this Court to decide," the court found "nothing in the language of Subdivision 4, Section 151.21, or Chapter 151 mandating disclosure of [respondent]s' acquisition costs." And, noting that "[appellant]s assert that the parties had 'unequal access to information' about acquisition costs," the court concluded that the "assertion is an insufficient basis to create a legal duty of disclosure." I agree. *See Baker v. Best Buy Stores, LP,* 812 N.W.2d 177, 182 (Minn. App.2012) (noting that, "when a party pleads a fraud claim, 'the circumstances constituting fraud ... shall be stated with particularity' " (quoting Minn. R. Civ. P. 9.02)).

Moreover, allowing appellants to proceed on their claim under the MCFA requires this court to recognize a new cause of action—a cause of action under the MCFA based on a violation of Minn.Stat. § 151.21, subd. 4. Recognizing new causes of action is something that we have generally declined to do. *Dukowitz v. Hannon Sec. Servs.,* 815 N.W.2d 848, 851 (Minn.

App.2012) (declining to recognize new wrongful-discharge claim), *review granted* (Minn. Sept. 25, 2012). I would conclude that appellants may not bring their fraud claims premised on violations of section 151.21 or chapter 151. *See Palmer v. Ill. Farmers Ins. Co.,* 666 F.3d 1081, 1086 (8th Cir.2012) (declining under Minnesota law to permit insureds to bring breach-of-contract claims premised on violations of Minn.Stat. § 65B.285, in case in which insureds did not challenge district court's conclusion that statute did not create private right of action); *see also Morris v. Am. Family Mut. Ins. Co.,* 386 N.W.2d 233, 233, 238 (Minn.1986) (holding that no private cause of action exists for claims premised on alleged violation of Minnesota Unfair Claims Practices Act, Minn.Stat. § 72A.17.325 (1984)); *Schermer v. State Farm & Cas. Ins. Co.,* 702 N.W.2d 898, 905 (Minn.App.2005) (expressly rejecting breach-of-contract claim based on violation of insurance statute), *aff'd on other grounds,* 721 N.W.2d 307 (Minn.2006); *Olson v. Moorhead Country Club,* 568 N.W.2d 871, 873–75 (Minn.App.1997) (concluding that employee could not bring common-law claim for conversion based on violation of Minnesota Fair Labor Standards Act for which no private right of action existed), *review denied* (Minn. Oct. 31, 1997); *cf. Bernstein v. Extendicare Health Servs.,* 653 F.Supp.2d 939, 944 (D.Minn.2009) (concluding that plaintiff's consumer-protection argument was inadequately alleged in part because accepting it "would allow litigation to supplant the extensive regulatory scheme imposed on nursing homes"); *Bernstein v. Extendicare Health Serv.,* 607 F.Supp.2d 1027, 1032–33 (D.Minn.2009) (concluding that "consumer protection class action does not lie, even though defendants were possibly violating Minnesota state law").

In *Schermer*, this court rejected the class's argument that Minn.Stat. § 72A.20, subd. 13, authorized it to bring a breach-of-contract claim against State Farm, noting that, although the department of commerce could bring an action against State Farm, the class could not bring a private cause of action. 702 N.W.2d at 905. This court stated that "the law is well settled that a litigant cannot ... use an alleged violation of [the unfair claims practices act] to prove elements of a common law claim." *Id.* In *Palmer*, the Eighth Circuit stated that plaintiffs' claims for breach were an attempt "to circumvent Minnesota's administrative remedies and create a private right of action when the legislature has not. Similar attempts have been rejected by Minnesota's courts in other cases." 666 F.3d at 1086.

In this case, the sale of generic prescription drugs is subject to a detailed regulatory scheme created by the legislature, like "[i]nsurance companies operating within Minnesota [which] are subject to a detailed regulatory scheme created by the legislature." *Id.* at 1083. Appellants are attempting to circumvent Minnesota's administrative remedies and create a private right of action when the legislature has not.

I would affirm the district court's dismissal of appellants' claim under the MCFA and therefore do not address appellants' argument that they are entitled to proceed under the private attorney-general statute.